IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Aneesa Johnson,<br><br>  Plaintiff,<br><br>v.<br><br>Georgetown University, *et al.*,<br><br>  Defendants. | Civil Action No. 1:25-cv-01540-CRC |

**DEFENDANTS JEWISH COMMUNITY FEDERATION OF SAN FRANCISCO AND
THE HELEN DILLER FAMILY FOUNDATION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION FOR SANCTIONS**

Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority, Defendants Jewish Community Federation of San Francisco ("JCF") and The Helen Diller Family Foundation ("HDFF," together, the "San Francisco Non-Profits"), appearing specially by and through counsel,[1] respectfully request this Court enter an Order of Sanctions against Plaintiff Aneesa Johnson ("Plaintiff") and her counsel for the reason that Plaintiff's Second Amended Complaint and its claims therein as they apply to the San Francisco Non-Profits are frivolous and baseless filings that are not well grounded, legally untenable, and brought with the improper purpose of harassing the San Francisco Non-Profits and vexatiously multiplying the proceedings. As fully set forth herein, the San Francisco Non-Profits submit the only appropriate sanction is dismissal of the Second Amended Complaint as to the San Francisco Non-Profits with prejudice, as well as an award of sanctions for the costs and fees incurred.

---

[1] In moving for sanctions based on Plaintiff's unsupported assertions of personal jurisdiction over the San Francisco Non-Profits, the San Francisco Non-Profits expressly preserve and do not waive their defense of lack of personal jurisdiction as set forth in their forthcoming motion to dismiss.

1

As required by Rule 11(c)(2), undersigned counsel provided counsel for Plaintiff with a copy of the Motion, supporting memorandum, and a "safe harbor letter" on August 29, 2025, but Plaintiff has not voluntarily dismissed or amended the violative pleading within the 21-day safe harbor period, requiring the filing of the present Motion. The San-Francisco Non-Profits previously provided Plaintiff with a substantially similar Motion, supporting memorandum, and a "safe harbor letter" related to the First Amended Complaint. In response, Plaintiff amended the complaint but, as shown, the deficiencies remain, necessitating this Motion.

## INTRODUCTION

The Second Amended Complaint represents an abuse of the judicial system. Plaintiff admits that she tweeted she has "a deep seeded hate for Zio bitches," adding she "call[s] them Zio bitches[] because they're dogs." (SAC ¶¶ 88-89). Now, having felt the reputational fallout of her own hateful speech, she attempts to redirect blame and public scrutiny by baselessly dragging Jewish charitable organizations into this case against her former employer, despite having no legal authority, no tolling of the statute of limitations that bars her claims, and no personal jurisdiction over either of the San Francisco Non-Profits. This is not a good-faith legal dispute. Instead, it is a calculated effort to weaponize the courts to target and harass ideological opponents.

The claims against the San Francisco Non-Profits are devoid of legal or factual merit. Plaintiff relies on misstatements of law, selective use of her own evidence, and obfuscation to fashion claims that are not supported by any law and plainly time-barred. Indeed, the Second Amended Complaint intentionally misstates D.C. law on the statute of limitations related to publications in a futile attempt to save her claims. (*See* SAC ¶¶ 78, 102, 399.) And even if her claims were timely (they are not), there is no tenable theory for holding a donor liable for the acts of a donee, especially when the alleged defamatory publication purportedly created by Canary

Mission occurred *before* the donation. Plaintiff's decision to sue the San Francisco Non-Profits reflects a willful and reckless misuse of the judicial process. This is litigation as a weapon, and it is conduct Rule 11 was specifically designed to punish and deter.

The San Francisco Non-Profits do not bring this motion lightly. But Plaintiff's conduct here is not merely frivolous—it is malicious. The Court must guard the judicial process against precisely this kind of misconduct. When a plaintiff asserts baseless claims for the sole purpose of harassment, sanctions are not only warranted, they are necessary to preserve the integrity of the judicial process. *See Del Canto v. ITT Sheraton Corp.*, 865 F. Supp. 934, 939-40 (D.D.C. 1994) (noting that "it is without doubt appropriate to impose some sanction under Rule 11 in order to deter repetition of the unacceptable conduct of counsel and 'comparable conduct by others similarly situated'") (quoting Fed. R. Civ. P. 11(c)(2)).

## FACTUAL BACKGROUND

In October 2023, Plaintiff was hired by Defendant Georgetown University ("Georgetown") and quickly placed on administrative leave and eventually fired for Plaintiff's offensive, antisemitic tweets that had come to light. (SAC ¶ 145.) Plaintiff admits that she tweeted the offensive comments, including referring to Jewish people as "Zio bitches," a term she coined "because they're dogs." (*Id.* ¶¶ 89-90.) In 2015, soon after her antisemitic tweets, a website called Canary Mission published a profile of Plaintiff and her hateful tweets. (*Id.* ¶¶ 96, 103.)

On February 4, 2025, Plaintiff brought claims of employment discrimination against Georgetown alone. (Compl., Dkt. No. 1-1 p. 2.) However, on April 29, 2025, Plaintiff amended her complaint, adding nine additional defendants, including the San Francisco Non-Profits (as well as other Jewish charitable organizations). (FAC, Dkt. No. 1-1 p. 64.) The San Francisco Non-Profits are philanthropic organizations. JCF supports Jewish life and broader community needs

across the Bay Area, Israel, and around the world. Through strategic grantmaking, donor-advised funds, and community partnerships, JCF directs hundreds of millions of dollars annually to causes such as education, health and social services, the arts, and promoting Jewish identity and continuity.[2] (Declaration of Joy Sisisky ("Sisisky Decl.") ¶ 2.) HDFF supports health, science, education, and cultural arts, with a focus on the Bay Area and Jewish needs.[3] (*See* Declaration of Jaclyn Safier ("Safier Decl.") ¶¶ 2-4.) For example, in the 2024 fiscal year, JCF provided more than $222 million in grants and loans to organizations across the globe. (Sisisky Decl. ¶ 2.) Similarly, HDFF has funded $150 million of the University of California San Francisco ("UCSF") Helen Diller Family Comprehensive Cancer Center and the UCSF Helen Diller Family Cancer Building at Mission Bay; the purchase of medical equipment at UCSF facilities; and over $10 million in research grants to the University of Southern California to support research. (Safier Decl. ¶ 2.) The San Francisco Non-Profits do not operate in the District of Columbia or otherwise avail themselves of the laws of the District of Columbia and do not consent to personal jurisdiction in this Court. (Safier Decl. ¶ 5-7; Sisisky Decl. ¶¶ 3-5.)

According to the Second Amended Complaint, the <u>*only*</u> alleged act committed by the San Francisco Non-Profits is a donation that allegedly ultimately supported Defendant Canary Mission. (SAC ¶¶ 16, 81, 237-39, 371-72.) Plaintiff cites several articles related to this donation, allegedly made in 2016 to a New York non-profit and that any further support ceased in 2018. (*Id*. ¶ 50 n.38; ¶ 67 n.43.) Despite Canary Mission publishing its allegedly defamatory profile and Plaintiff's tweets in 2015 (*before* the alleged donation was made), and the termination of Plaintiff's employment by Georgetown occurring in 2023, Plaintiff alleges legally untenable claims of

---

[2] JEWISH COMM. FED. https://jewishfed.org/ (last visited July 3, 2025).
[3] DILLER FOUND., https://dillerfoundation.org/(last visited July 3, 2025). HDFF is a supporting foundation of JCF. (Safier Decl. ¶ 4.)

4

conspiracy and aiding and abetting discrimination against the San Francisco Non-Profits for allegedly making a single donation to a non-profit in 2016.

Counsel for the San Francisco Non-Profits raised these issues, and others, with Plaintiff's counsel, Mr. Abdel-Rahman Hamed, during a meet-and-confer telephone call on June 19, 2025. (Declaration of Kevin P. Dwight ("Dwight Decl.") ¶ 2.) Specifically, counsel asked Mr. Hamed whether he had any authority supporting the proposition that a non-profit organization could be held liable for a donation. Mr. Hamed admitted he had none but instead claimed that knowingly supporting an organization involved in allegedly illegal activity creates liability, and falsely claiming that Canary Mission committed an illegal act re-publishing Plaintiff's own tweets. (*Id.*) Mr. Hamed also agreed to consider but ultimately never addressed the clear lack of personal jurisdiction over the San Francisco Non-Profits, the lack of causation, and the expired statute of limitations. (*Id.*)

Even more troubling, Mr. Hamed himself holds anti-Jewish views, reinforcing the fact that this litigation is not a legitimate legal effort, but rather a calculated attempt to target perceived ideological opponents and burden them with baseless legal proceedings. A review of Mr. Hamed's social media reveals recent posts he authored expressing outrage over the Israel-Palestine conflict, as well as the existence of Israel in general, in abhorrent terms:

- "Zionists are a EuroAmerican White Supremacist antisemitic curse onto humanity—a malignancy that will be eradicated."

- In response to an Israeli air strike: "This is the sowing. The coming harvest will be bitter."

- "Zionists teach hate, white supremacy, and antisemitism that shows up in occupation, apartheid, and genocide."

5

- "My dear sister, your cries of pain and agony echo through the Heavens, shaking the universe to its core. There will be an account for my dead nephew and for Palestine. May the eyes of Zionists never know sleep."

- "Damn Zionism and its adherents to Hell. There will be an accounting for this child and every Palestinian soul killed, raped, maimed, starved, and brutalized by the antisemitic fervor of Zionism."

- "This terrorism. This antisemitism. This hate. This evil. Day in. Day out. Formalized in 1948. Backed by EuroAmericans for 76+ years. This does not have a right to exist. This, too, will come to a decisive end."

(*Id.* ¶ 3, Ex. 1.)

## LEGAL STANDARDS

Under Rule 11, an attorney who files a pleading or motion "certifies" that pleading or motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). An attorney must certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id*. Rule 11 is a "prophylactic measure[ ] to protect the court from frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Nat'l Casualty Ins. Co. v. Solomon*, 502 F. Supp. 3d 401, 410 (D.D.C. 2020) (quoting *Cobell v. Norton*, 157 F. Supp. 2d 82, 86 n.8 (D.D.C. 2001)).

"A party's representations are 'frivolous and thus worthy of sanctions when they are utterly lacking in legal merit and evidentiary support.'" *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, No. 10-cv-2095, 2014 WL 12787643, at *3 (D.D.C. Oct. 15, 2014) (quoting *ARMA, S.R.O. v. BAE Sys.*

6

*Overseas, Inc.*, 961 F. Supp. 2d 245, 271 (D.D.C. 2013) (internal quotation marks and citation omitted)). "The Court has discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation." *Id*. (quoting *Long v. Dep't of Justice*, 207 F.R.D. 4, 6 (D.D.C. 2002)). "Rule 11 plainly 'requires that an attorney conduct a reasonable inquiry into the factual and legal basis for a claim before filing.'" *Williams v. Verizon Washington, D.C. Inc.*, 322 F.R.D. 145, 148 (D.D.C. 2017) (internal citations omitted). Though courts do not award Rule 11 sanctions lightly, the Rule 11 test is an objective one, that is, "whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim." *Hickey v. Scott*, 738 F. Supp. 2d 55, 72 (D.D.C. 2010). And the Court is not limited to the pleading before it to determine whether there is a Rule 11 violation but will consider the totality of the circumstances. *See Beck v. Test Masters Educ. Servs. Inc.*, 7 F.Supp.3d 46, 49 (D.D.C. 2013); *Bradley v. Chiron Corp.*, No. C 94-0432 CW, 1996 WL 441022, at *3 (N.D. Cal. July 15, 1996). Rule 11 does not attempt to provide an exhaustive list of factors for the appropriate sanction. The Court, however, may strike the offending pleading and/or award monetary sanctions paid to the Court. Fed. R. Civ. P. 11 advisory committee's note ¶ 12.

In addition, an attorney that "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Further, "federal courts, in the exercise of their equitable powers, may award attorneys fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5 (1973). Thus, the Court has inherent authority to award fees as a sanction for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 5.

7

## ARGUMENT

**I.    There is No Legal Basis for Plaintiff's Claims Against the San Francisco Non-Profits.**

Plaintiff's entire theory of liability against the San Francisco Non-Profits is premised on a baseless assertion that charitable donors are strictly liable for the actions of donees. That is not the law, and nothing supports this vast expansion of liability and chilling of constitutionally protected First Amendment activity.

The United States Supreme Court has clearly held that, "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). The Court has also held that associating with a group that employs unlawful methods does not automatically strip an individual of First Amendment protection for freedom of association. *See Scales v. United States*, 367 U.S. 203, 229 (1961) ("[Q]uasi-political parties or other groups that may embrace both legal and illegal aims differ from a technical conspiracy, which is defined by its criminal purpose"); *see also NAACP*, 458 U.S. at 908 ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected").

Plaintiff's theory that the San Francisco Non-Profits can be held liable for a donation rests on an unproven civil claim of defamation against Canary Mission. Plaintiff likely will attempt to apply a line of cases related to an anti-terrorism law prohibiting donations made to known terrorist organizations for the specific purpose of providing material support for violent attacks. Nothing could be more inapposite or inappropriate. Plaintiff asserts that the San Francisco Non-Profits made a donation to the Central Fund of Israel, a duly recognized 501(c)(3) charitable organization,

8

which allegedly transmitted funds to Canary Mission (SAC ¶ 16)—a group Plaintiff contends maintains a website containing "cyberstalking dossiers" and "defamatory profiles" of Plaintiff and other alleged anti-Semites. (*Id*. ¶¶ 7, 8, 60, 126, 149, 201, 256, 387, 390.) However, there is no connection to any known terrorist organizations intended to finance violent acts, and therefore any attempted comparison is legally and factually unsupportable.

Indeed, imposing liability on donors based on unproven allegations of defamation against donees would chill charitable giving, political contributions, and philanthropic efforts. It would also conflict with First Amendment protections in the context of donations to expressive organizations, like the Central Fund of Israel. Such a rule would have a profound deterrent effect on lawful donations, and courts therefore refuse to extend liability to donors for association with donees and require direct participation or conspiracy. *See Scales*, 367 U.S. at 229; *NAACP*, 458 U.S. at 908. It should be rejected out of hand here too.

Additionally, both of Plaintiff's claims against the San Francisco Non-Profits are time-barred. *See Reynolds v. U.S. Capitol Police Bd.*, 357 F.Supp.2d 19, 25 (D.D.C. 2004) (awarding sanctions for pursuing time-barred claims and stating that "[i]t is plainly in violation of Rule 11(b)(2) to allege legal theories that have no apparent basis for application in this case"). There is no plausible basis for asserting that an alleged 2016 donation (SAC ¶ 50 n.38) supported an alleged defamatory website profile already published the year before in 2015 (*id*. ¶¶ 96, 103) is actionable in relation to a 2023 termination. But Plaintiff's Second Amended Complaint goes a step further, specifically trying to save her claims from being time-barred by asserting a continuing violation and "[e]ach new view of the profile—including by prospective employers and academic institutions—qualifies as a republication of the defamatory content." (*Id*. ¶ 102; *see also id*. ¶ 399.) No such exception exists. In the District of Columbia, the "single publication" rule governs the

9

statute of limitations for defamatory statements. *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (citing *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 n.2 (D.C. 2001)). Under this rule, the statute of limitations begins to run on the date the statement is published or is "first generally available to the public." *Id.* (quoting *Mullin*, 785 A.2d at 298 n.2). The statute of limitations does not restart—or not start to run at all—simply because "[c]opies of the original" are made, as such copies are "still part of the single publication." *Id.* The single publication rule applies equally to websites as to traditional media. *Jankovic*, 494 F.3d at 1087. Even with a generous reading, Plaintiff's misstatement of the law is sanctionable.[4]

Because there is no tenable theory of liability against the San Francisco Non-Profits, and their inclusion in this lawsuit appears calculated solely to harass and needlessly complicate the litigation, the imposition of sanctions is both appropriate and necessary.

## II. There is No Factual Basis for Plaintiff's Claims Against the San Francisco Non-Profits.

### A. Plaintiff's Own Cited Evidence and Scattershot Allegations Prove Her Legal Theory is Untenable.

Plaintiff's allegations against the San Francisco Non-Profits are so deficient that they not only fail to meet the minimal standards of Rule 12 but also warrant immediate dismissal to avoid unnecessary burden on the Court and the San Francisco Non-Profits. Plaintiff's Second Amended Complaint is more than just poorly drafted or procedurally deficient; rather, the allegations are so weak they reveal her and her counsel's improper purpose in adding the San Francisco Non-Profits to this lawsuit in the first place.

Plaintiff cites and relies on materials that directly contradict the very allegations asserted,

---

[4] Westlaw searches for cases in the state and federal courts of the District of Columbia that mention "continuing publication" or "continuing harm" in the context of defamation results in no exception to the *Jankovich* holding.

exposing the fundamental implausibility of her claims. Plaintiff's only support for her allegation that the San Francisco Non-Profits donated money to Canary Mission–their *only* alleged bad act—comes from an article in *The Nation* that "revealed that, like traditional mafia organizations that operate through front companies and complex ownership structures, Canary Mission employs an elaborate network of intermediaries to obscure its true sources of funding and control" and "receives funds through various American pass-through entities, including the Jewish Community Federation of San Francisco and the Helen Diller Family Foundation." (SAC ¶ 50.) But the article she relies on actually makes clear that the purported donation by the San Francisco Non-Profits to Canary Mission was made in 2016 (*id*. ¶ 50 n.38), *seven* years before Plaintiff's termination from Georgetown and *after* Canary Mission had already re-published Plaintiff's tweets. (*Id*. ¶ 96, 103.) What's more, Plaintiff relies heavily on another article from *The Forward* (FAC ¶¶ 67, 82) that states that, in October 2018, "the federation [JCF] announced that it would no longer fund the group," referring to Canary Mission. (*See id*. ¶ 67 n.43.) Thus, the articles relied upon by Plaintiff allege, *at best*, that the San Francisco Non-Profits made a single donation to Canary Mission in 2016—after the alleged defamation was published—and announced in October 2018 that they would not do so again. Plaintiff cannot rely on documents for certain points (*e.g.* the donation to the Central Fund of Israel) and then ignore their broader context (*e.g.,* donation made after alleged defamatory statement and no further donations made) when it undercuts her narrative. This selective citation underscores the lack of a good-faith basis for the claims.

Given the complete lack of factual allegations connecting the San Francisco Non-Profits to any actionable conduct, and the contradictory material Plaintiff herself cites, the Court should dismiss the San Francisco Non-Profits with prejudice. Further, given the legally untenable nature of the claims, the Court should assess sanctions against Plaintiff and her counsel under Rule 11.

### B. There is No Personal Jurisdiction Over the San Francisco Non-Profits.

Highlighting Plaintiff's sanctionable conduct is her lone "allegation" supporting personal jurisdiction against the San Francisco Non-Profits based on alleged donations to Defendant Canary Mission: "[T]he Helen Diller Family Foundation [and] Jewish Community Federation of San Francisco . . . purposefully availed themselves of this jurisdiction by funding Canary Mission's cyberstalking operations designed to suppress Palestinian advocacy in the District." (SAC ¶ 7.) However, the Second Amended Complaint states that Canary Mission is *not* located in the District of Columbia. (*Id*. ¶ 16 ("[Canary Mission] maintains a principal place of business c/o Megamot Shalom, 13 Hillel Street in Jerusalem, Occupied Palestine, and a U.S. address of c/o Central Fund of Israel, 461 Central Ave, Cedarhurst, NY 11516.").)

Plaintiff and counsel have failed to comply with Rule 11 in filing and pursuing the Second Amended Complaint against the San Francisco Non-Profits in this district. Plaintiff fails to allege any facts that would provide this Court a basis for exercising personal jurisdiction over either of the San Francisco Non-Profits. Plaintiff's theory (implicit in the Second Amended Complaint and explicitly raised in discussion between counsel) that personal jurisdiction exists wherever a website is accessible (*i.e.* all fifty states and the District of Columbia) is not the law. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites."); *Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265, 273 (D.D.C. 1998) ("There is no nationwide jurisdiction for defamation actions . . . and the advent of the Internet and Internet service providers such as AOL does not change that fact."); *Kline v. Williams*, No. CIV.A.05-01102(HHK), 2006 WL 758459, at *2 (D.D.C. Mar. 23, 2006) (stating that the "mere allegation that the conduct in question occurred via the Internet, without more, is insufficient to satisfy the jurisdictional limitations imposed by District law and the federal

Constitution"); *Hourani v. Psybersolutions LLC*, 164 F.Supp.3d 128, 138 (D.D.C. 2016) (citing *Forras v. Rauf*, No., 812 F.3d 1102, 1107–08, 2016 WL 556683, at *4–5 (D.C. Cir. Feb. 12, 2016) ("Publishing defamatory statements within the District that were made outside the District does not meet the terms of § 13-423(a)(3) or (4).").

Courts have held in numerous instances that it is proper to respond to a plaintiff's baseless assertion of personal jurisdiction with Rule 11 sanctions. *See, e.g., Levine v. Cnty. of Westchester*, 164 F.R.D. 372, 375 (S.D.N.Y. 1996) (finding "unquestionably frivolous" an action "fail[ing] to set forth any colorable basis for personal jurisdiction"); *Hasty v. Paccar, Inc.*, 583 F. Supp. 1577, 1580 (E.D. Mo. 1984) (entertaining a motion for Rule 11 sanctions where plaintiff failed to produce evidence to establish the court's personal jurisdiction over defendant, and noting the "considerable and unnecessary expense and trouble in obtaining the dismissal"). Plaintiff has not put forth any evidence that the Court has personal jurisdiction over either of the San Francisco Non-Profits on any basis under existing law.

*Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22 (D.D.C. 2012), a case from this District Court, is instructive. There, the Court *sua sponte* ordered plaintiffs' counsel to show cause why it should not impose Rule 11 sanctions because of the clear lack of jurisdiction (in this instance, subject-matter jurisdiction). *Id*. at 31–32.[5] It was apparent to the Court that counsel had not made the reasonable inquiry required under Rule 11 when asserting diversity jurisdiction in the original complaint. *Id*. at 31. When plaintiffs' counsel amended the complaint to add baseless RICO claims under federal question jurisdiction, the Court wrote that the claims "were not warranted by existing law or a 'nonfrivolous argument for extending, modifying, or reversing existing law or establishing

---

[5]   Even where a court lacks jurisdiction over a plaintiff's claims, it has the power to retain the matter in order to determine Rule 11 sanctions. *Son Ly*, 910 F. Supp. 2d at 31 (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 138–39 (1992)).

new law.'" *Id*. at 32 (quoting Fed. R. Civ. P. 11(b)(2)). Rather, in ordering counsel to show cause, the Court stated that it appeared "the RICO claims were frivolously filed solely to invoke the jurisdiction of this Court and sanctions under Rule 11 may be warranted." *Id*.

Like *Son Ly*, Plaintiff has frivolously asserted personal jurisdiction here without factual support. It is not reasonable for Plaintiff or her counsel to believe that there is a chance for success for such arguments under existing law. Any reasonable inquiry into the facts would have led to the conclusion that this Court has no personal jurisdiction over the San Francisco Non-Profits. Nor can Plaintiff make any reasonable argument to extend, modify, or reverse existing law, or create new law in support of her theory. Given the totality of the circumstances, the Court should sanction Plaintiff and her attorney under Rule 11 as a result.

### III.    The San Francisco Non-Profits Were Added to the Lawsuit to Harass Them.

Plaintiff's addition of the San Francisco Non-Profits (and other co-defendants) is not for a proper purpose, but rather as a means to harass, compound litigation, and ultimately chill constitutionally protected expression by prominent Jewish organizations. Rule 11(b)(1) prohibits filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Here, the conduct of Plaintiff and her counsel does exactly that.

Plaintiff's Second Amended Complaint goes far beyond portraying Plaintiff as a supporter of Palestine who has made antisemitic statements. (SAC ¶ 48, 94, 98-99.) Instead, throughout her pleading, Plaintiff uses inflammatory language such as "Occupied Palestine," "Zionist apartheid system," "Zionist occupation" and "extermination project" to describe Israel (*id*. ¶¶ 16, 35, 36, 38, 39, 40-48, 76) to inflict further harm. In what should be a simple employment lawsuit against her former employer, Plaintiff has attempted to reframe criticism of her hate speech (that she admits is accurate) as actionable legal harm, asserting conspiratorial claims to target the San Francisco Non-Profits with no connection to the alleged wrongful termination claim.

Moreover, Plaintiff's counsel has exhibited a pattern of conduct that strongly suggests this litigation is driven by ideological animus and personal vendetta rather than a legitimate legal position. Counsel has made numerous public statements regarding the Israel-Palestinian conflict that are not only inflammatory, but openly hostile and threatening. (*See* Dwight Decl. ¶ 3.) These statements go beyond mere political opinion—they are expressions of deep-seated animus that cast serious doubt on the good faith of the legal theory advanced and strongly support the conclusion that this action is intended to harass, intimidate, and punish those whom counsel perceives as ideological opponents.

The nature of the allegations, the implausible factual theories, and the inclusion of the San Francisco Non-Profits without a tenable basis for liability all point to a strategic campaign of reputational harm for their ideological or religious affiliations, not the vindication of any cognizable legal right. This is particularly evident in Plaintiff's inclusion of the San Francisco Non-Profits—Jewish non-profit organizations that, *at most*, made a donation years ago that allegedly supported a second charitable organization that, among other things, published Plaintiff's actual statements.

Plaintiff's misuse of the court system to pursue political and personal retribution is exactly the type of conduct Rule 11 is designed to prevent. Where litigation is employed as a tool of intimidation against ideological opponents—especially in cases implicating First Amendment activity—the Court has both the authority and the responsibility to impose sanctions to deter such abuse.

///

///

///

**CONCLUSION**

For the foregoing reasons, the San Francisco Non-Profits respectfully request that this Court (1) dismiss the Second Amended Complaint as to the San Francisco Non-Profits with prejudice, and (2) award sanctions that the Court deem just and appropriate. The San Francisco Non-Profits further request that the Court grant the San Francisco Non-Profits leave to file a statement of costs and fees incurred upon the award of sanctions against Plaintiff and her counsel in support of the amount of the sanction award.

Dated: September 22, 2025                                    Respectfully submitted,

By:   /s/ Kevin P. Dwight
      Joshua N. Drian (DC Bar 1009917)
      Douglas J. Smith (DC Bar 1028963)
      Katherine M. Herman (DC Bar 90019885)
      1050 Connecticut Ave. NW, Suite 600
      Washington, D.C. 20036
      Telephone: (202) 585-6500
      Facsimile: (202) 585-6600
      Email: JDrian@manatt.com
             Djasmith@manatt.com
             KHerman@manatt.com

      Kevin P. Dwight (*pro hac vice*)
      One Embarcadero Center, 30th Floor
      San Francisco, CA 94111
      Telephone: (415) 291-7400
      Facsimile: (415) 291-7474
      Email: KDwight@manatt.com

      *Attorneys for Defendants Jewish*
      *Community Federation of San Francisco*
      *and The Helen Diller Family Foundation*