# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Case No**. **25-cv-1540-CRC**

**ANEESA JOHNSON**,

   *Plaintiff,*

vs.

**GEORGETOWN UNIVERSITY, et al.,**

    *Defendants.*

**(Judge Christopher R. Cooper)**

## MILSTEIN DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's Opposition (ECF No. 63) does not and cannot address the fatal legal defects in this lawsuit, identified in the Milstein Defendants' Motion to Dismiss and their Rule 11 letters and motions. That is because the Complaint is absurd on its face and barred by several elementary rules and doctrines. Even assuming that every allegation against the Milstein Defendants were true (*i.e.*, that they "funded" the Canary Mission, several years ago (*see* SAC ¶ 81)), that is not a basis to sue them for the Canary Mission's independent and protected free speech about Plaintiff, or for Plaintiff's lawful at-will termination by Georgetown for her antisemitism.

Plaintiff filed a 117-page omnibus Opposition to all Defendants' motions to dismiss, disregarding the local rules for brief length and for meeting and conferring. *See* D.D.C. L.R. 47; D.D.C. L.R. 7(m).[1] Despite its length, the Response does not successfully rebut

---

[1] This Court already admonished Plaintiff's counsel to meet and confer before filing motions. Despite having ample time to do so and knowing he would file a 117-page

the arguments raised by the Milstein Defendants and ignores many of them. Like the Complaint, her brief is rife with irrelevant political diatribes and incendiary terms that lack substance or legal relevance ("cyberstalking," "systemic oppression," "coordinated campaign"). Plaintiff repeatedly uses the term "Zionist conspiracy" but fails to allege actual conspiracy. Claiming that several Jewish Zionists—who do not know one another—engaged in a shadowy conspiracy to harm Plaintiff is the textbook definition of antisemitism.[2]

At bottom, Plaintiff is disappointed that her hideous public tweets were revealed and that she suffered professional consequences. But the Milstein Defendants bear no legal or moral responsibility. Stripped of its empty rhetoric, the Complaint lacks any objectively reasonable—much less plausible—claims against the Milstein Defendants. The lawsuit should be dismissed with prejudice.

## I.    PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION

Plaintiff does not address the jurisdictional defects identified in the Motion. As explained (Mot. 10), Plaintiff bears the burden of establishing personal jurisdiction and must allege specific facts rather than conclusory assertions. But, in her brief, Plaintiff still does not identify a single act that would bring the Milstein Defendants within the District's longarm statute or satisfy due process. Opp. 19-21, 47-54. Plaintiff raises two theories of jurisdiction. Both are incoherent.

---

omnibus Response, counsel failed to meet and confer on his motion for a page extension (*see* ECF No. 64), warranting additional sanctions from this Court.

[2]*Antisemitism*, International Holocaust Remembrance Alliance, *Working Definitions & Charters*, https://holocaustremembrance.com/resources/working-definition-antisemitism (last visited Nov. 18, 2025) ("Antisemitism frequently charges Jews with conspiring to harm humanity, and it is often used to blame Jews for 'why things go wrong,'" and it includes "the myth about a world Jewish conspiracy").

*First*, Plaintiff argues that the Milstein Defendants engaged in a "persistent course of conduct" in the District. Opp. 19. But she glaringly fails to identify *any conduct* in the District, much less persistent conduct. To the contrary, she argues that allegedly "funding Canary Mission" through an Israeli entity suffices because the website's purpose was to "damage employment prospects of Palestinian rights activists." *Id.* While there is no such plausible allegation to that effect regarding the Milstein Defendants, that still is not conduct in the District.

Plaintiff further relies on *Lewy v. Southern Poverty Law Center*, 723 F. Supp. 2d 116, 126 (D.D.C. 2010), which is far off the mark. That case addresses jurisdiction over a *website*, not any of its alleged funders. It is irrelevant given that Plaintiff is trying to hail an alleged *donor* into this Court based on the action of a third-party website. And even if Plaintiff could treat the Canary Mission and Milstein Defendants as indistinguishable for purposes of jurisdiction (she cannot and offers no basis to do so), *Lewy* dealt with an "interactive website" that, among other things, allowed D.C. users to sign up, distributed magazine to District citizens, solicited donations from D.C. residents, and sent employees to D.C. *Id.* at 126. By contrast, Canary Mission is "passive," as it does none of those things and only posts information. SAC ¶¶ 16, 70-73. Plaintiff seems to suggest that the website is "active" because it made a profile of Ms. Johnson. Opp. 19. But that does not make it an active website for jurisdictional purposes. *See Safex Found., Inc. v. Safelaunch Ventures Ltd.*, 694 F. Supp. 3d 1, 10 (D.D.C. 2023) (Cooper, J.) ("a website is 'passive'" when it "serv[es] as a 'mere communicator of information'" (quotation omitted)).

Plaintiff reliance on the *Calder* effects test also fails, as it requires intentional acts directed at the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984) (cited Opp. 20-21). Again, Plaintiff does not allege any facts that meet that standard, based on alleged

donations to the Canary Mission years ago. Plaintiff does not and cannot allege that the Milstein Defendants controlled, owned, or directed Canary Mission or its activities, or that they even knew what it would do or whom it would profile. Opp. 12. That is not sufficient for personal jurisdiction, as courts decline to apply *Calder* when the alleged harm depends on independent actions of third parties. *See Forras v. Rauf*, 812 F.3d 1102, 1107-09 (D.C. Cir. 2016) (concluding that court lacked personal jurisdiction over defamation action where "*someone else* chose to quote" the out of state remarks); *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 299-300 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997); *Art Leather Mfg. Co. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y. 1995) (court lacked personal jurisdiction because a third-party's independent actions made the out-of-state "act too remote to be the cause of injury" within state). Plaintiff's sweeping interpretation of the *Calder* effects test—*i.e.*, that anyone can be hailed into U.S. courts based on alleged indirect donations to a third party—not only flies in the face of binding precedent, but it also eviscerates any limitation on the longarm statute or due process.

Plaintiff attempts to analogize her theory to terrorism financing cases such as *Wultz* and *Bernhardt,* but those attempts also fail. *See* Opp. 20. These two cases arise under a federal statute, the Antiterrorism Act, which specifically "authorizes nationwide service of process to establish personal jurisdiction over a defendant." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 31 (D.D.C. 2010) (citing 18 U.S.C. § 2334(a)); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022). The two cases have nothing to do with D.C.'s longarm statute. And in *Bernhardt*, the allegations for jurisdiction were *insufficient* because of attenuation between the terrorist attack and the bank's evasion of sanctions. 47 F.4th at 864.

Plaintiff's "conspiracy" theory likewise falls far short because she alleges no conspiracy whatsoever. By her own admission the Milstein Defendant's *entire role* in this supposed conspiracy was "funding Canary Mission." Opp. 21. As discussed below, she cannot allege any of the basic elements, including meeting of the minds, unlawful predicate acts, or even any *communications* between the Milstein Defendants and alleged conspirators. *See Second Amend. Found. v. United States Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (rejecting "conspiracy-based jurisdiction" claim when plaintiff failed to make a prima facie showing of the elements of civil conspiracy). The notion that allegedly donating to a third-party website years ago, and doing only that, would make someone part of a conspiracy—and subject to personal jurisdiction for all the conspiracy's alleged acts—is nonsensical. Plaintiff fails to establish personal jurisdiction in this Court.

## II.  PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST THE MILSTEIN DEFENDANTS

Plaintiff's Response does not and cannot address the fatal defects in her the claims identified in the Motion to Dismiss. The Complaint is barred by several elementary legal rules and doctrines, none of which Plaintiff can overcome.

### A.  Plaintiff Fails to Allege Aiding and Abetting Liability Against the Milstein Defendants under D.C. Code § 2–1402.62

#### 1.  Plaintiff Does Not Identify an Underlying Unlawful Act

Under D.C. Code § 2–1402.62, there must be a "predicate" discriminatory act to support aiding and abetting liability. *See, e.g.*, *Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873, 888 (D.C. 1998); *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010). As the Milstein Defendants explained (Mot. 12-13), and, for the reasons in Georgetown's Motion, she cannot overcome the fact that she was an at-will employee. *See*

*Robertson v. District of Columbia*, 269 A.3d 1022, 1033 (D.C. 2022) (at-will employee can be discharged for any reason).

Plaintiff argues that Georgetown did not properly invoke its employment manual because, by her own account, her social media activity was not sufficiently "unacceptable." Opp. 81. But Plaintiff retweeted a heinous, racist posts about calling Orthodox Jews the devil, and she called Zionists—which include many Georgetown students and professors— "dogs" and "b**ches." SAC ¶¶ 89-90, 145. Georgetown cited its reasons in its dismissal letter and was well within its discretion to terminate her at-will employment. Because Georgetown did not discriminate against or unlawfully terminate Plaintiff, her secondary (and tertiary) liability claims must fail.

        2.    <u>Plaintiff Fails to Allege that the Milstein Defendants Aided and Abetted Her Lawful, At-Will Termination</u>

Beyond failing to allege a primary violation of D.C. Code § 2–1402.62, she fails to allege aiding and abetting, for several reasons. Again, her *only* basis to haul the Milstein Defendants into court is that they allegedly donated money to the Canary Mission several years ago, and that this website—without any alleged direction or instruction from the Milstein Defendants—reposted her own tweets.

***First Amendment.*** The Canary Mission's speech is protected by the First Amendment and there cannot be tertiary liability against the Milstein Defendants for allegedly funding them. According to Plaintiff's Complaint, all Canary Mission did was repost her antisemitic tweets. SAC ¶¶ 96-102. It is beyond peradventure that this is protected speech. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017) (explaining that social media posts constitute the "legitimate exercise of First Amendment rights"); *see also Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)

("presenting a curated compilation of speech originally created by others" via a social media app is a form of expression); *Flannery v. Eckenwiler*, 2024 U.S. Dist. LEXIS 176663, at *19 (D.D.C. Sep. 30, 2024) ("[A]ctivities like posting on social media . . . on a topic of public concern lie at [the First Amendment's] core."). Notably, Plaintiff does not address that insurmountable hurdle against Canary Mission specifically. Opp. 89-91, 112-16. But to the extent that she raises First Amendment arguments against Defendants Wolff, Hellman, and Georgetown, they are all flatly incorrect.

First, Plaintiff argues that "employment discrimination" is not protected speech. Opp. 112-14. But the Canary Mission could not engage in employment discrimination because it does not employ her, so that argument is inapplicable. In any event, that argument aims at a strawman, as no Defendant has argued that the First Amendment bars employment claims; those fail on the merits.

Second, Plaintiff claims that "defamatory falsehoods" and "intentional harassment" fall outside First Amendment protection. Opp. 114-15. But she does not identify any statement by Canary Mission specifically that is a "defamatory falsehood" or explain how it "harass[ed]" her. *Id.* Nor could she. As her own allegations (SAC ¶¶ 96-102) rebut those arguments. By her own account, Canary Mission simply reposted her own tweets, accurately, and did not "harass" her. That she does not like the consequences of her own speech does not make the speech of others defamatory or unprotected by the First Amendment. Plaintiff's arguments that are directed a Defendants Wolff and Hellman—*i.e.*, that "decontextualized" opinion is not protected (Opp. 115)—is also plainly wrong under blackletter law. *Hurley v. Irish-American Gay*, 515 U.S. 557, 560 (1995) (presenting a curated and "edited compilation of [third party] speech" is itself protected speech).

Third, other than her claim against Georgetown for employment discrimination, Plaintiff's entire Complaint turns on what others *said*. She does not "target conduct" as opposed to protected expression, as she argues. Opp. 115-16. Conflating her claims against Georgetown (her employer) and the other Defendants, including the Milstein Defendants (who have no relationship to her), Plaintiff argues that they may "not *discriminate* while speaking" or "use employment authority to retaliate against protected-class membership." *Id.* But none of the other Defendants have "employment authority" to act against her. To the extent Plaintiff suggests that the non-Georgetown Defendants may not "discriminate" against her in their speech, *i.e.*, criticize her, that is the definition of protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 574(1968) (holding that criticism was protected speech).

In short, the First Amendment is a clear and absolute bar to Plaintiff's claims against the Milstein Defendants via Canary Mission. Her failure to address that issue as to Canary Mission waives any counterargument. *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 278 (D.D.C. 2018) ("'[W]hen a [litigant] files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.'" (quoting *Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012)). Still, any generous interpretation of her Opposition that would apply her argument to Canary Mission still fails on the merits, as it is evident from the face of the Complaint that Canary Mission's speech is truthful, accurate, non-defamatory, related to an issue of public importance and to a person who spoke publicly on such issues, and thus it is protected free speech.

***Indirect Donor Liability***. Another clear and absolute bar to Plaintiff's claim is the rudimentary doctrine of legal fault and, relatedly, corporate limited liability. Plaintiff

does not allege that the Milstein Defendants did anything to her. Instead, she contends the Milstein Defendants are liable for aiding and abetting employment discrimination because they allegedly donated to Megamot Shalom, which, in turn, allegedly funded Canary Mission, which in turn reposted her own tweets, which in turn allegedly contributed to her lawful and independent termination by Georgetown. Opp. 47-50. Again, Plaintiff does not allege that the Milstein Defendants owned, controlled, or operated, directed, or contributed content to either website.

District law does not recognize liability for donors or funders based on the wholly independent acts of recipient organizations, and Plaintiff does not identify any supporting case law here or in other jurisdictions. Indeed, Plaintiff altogether fails to address the fatal hurdle that corporate separateness prevents any liability for shareholders or owners of a corporation (or alleged "funders") absent the extraordinary circumstances required for veil piercing. *See, e.g.*, *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984); *Lawlor v. D.C.*, 758 A.2d 964, 975 (D.C. 2000); *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470-71 (D.C. 2008). Though the Milstein Defendants raised this argument several times (Mot. 16; ECF No. 57), Plaintiff does not argue that veil-piercing, alter ego, or agency liability are warranted, and she has waived any such argument. *Holt*, 316 F. Supp. 3d at 278. The corporate shields between the Milstein Defendants and Canary Mission and Megamot Shalom stand as absolute bars to liability. [3]

---

[3] While Plaintiff does not specifically argue veil piercing, alter ego, or agency liability, she states that "[t]he funding relationship was not passive philanthropy—it was active coordination with discriminatory targeting operations designed to damage employment prospects based on protected characteristics." Opp. 48. These are legally irrelevant labels and rhetoric that do not meet the high bar for piercing corporate veil. But, even if the rhetoric in her Opposition were legally relevant, Plaintiff does not actually allege in her Complaint any "active coordination with discriminatory targeting"; she alleges *only* that

***Insufficient Allegations***. Putting aside the insurmountable hurdles of the First Amendment and blackletter corporate law, Plaintiff fails to allege personal involvement by the Milstein Defendants in any tortious act. She does not claim that they created, published, or directed content; owned or operated a website; communicated with Georgetown, or directed any action concerning Plaintiff's employment. *See* Opp. 47-52. Plaintiff does not and cannot allege that the Milstein Defendants *even knew who Plaintiff was* such that they could be liable for aiding and abetting any conduct against her.

The D.C. Circuit has held that *Halberstam v. Welch*, 705 F.2d 47 (D.C. Cir. 1983), governs aiding and abetting theories in the employment discrimination context. *See Gaujacq v. EDF Inc.*, 601 F.3d 565, 576, 578 (D.C. Cir. 2010). Although Plaintiff does not address *Halberstam*, she relies on *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* which likewise requires that the defendant "participated in the discrimination and sought to make it succeed." 715 A.2d 873, 888 (D.C. 1998); *id.* ("An aider or abettor is one who in some sort associates himself with the venture, participates in it as something he wishes to bring about, and seeks by his action to make it succeed."). In *Wallace*, a law firm associate sued the firm and several partners for discrimination and aiding and abetting under the District of Columbia Human Rights Act. *Id*. The partner defendants were closely involved in the operations of the associate's employer (the firm) and actively participated in the termination decision. *Id.* at 888-89. Here, by contrast, the Milstein Defendants were not Plaintiff's employers, and had no contact with her employer at all, much less any role in her work or termination. They are not partners, principals, officers, shareholders, or agents of Georgetown, making *Wallace* inapposite.

---

the Milstein Defendant *donated* to the Canary Mission years ago, not that it communicated with, owned, operated, or controlled the website. SAC ¶ 81.

Plaintiff even recites the elements in her brief ("knowledge" and "substantial assistance" (Opp. 42)), but she does not explain how either of those are *possibly* satisfied given that Milstein Defendants never spoke about, did anything to, or even knew Plaintiff. Plaintiff skips past these elements and declares the Milstein Defendants meet the standard through alleged "coordinated financial support provided with knowledge and intent to facilitate employment discrimination" and "specific discriminatory intent." Opp. 47. But the SAC never alleges that the Milstein Defendants "coordinated" with Canary Mission (or any other co-conspirator for that matter) or that they had knowledge or specific intent that Canary Mission would aid and abet Georgetown in allegedly discriminating against Plaintiff in her employment.

To the extent that Plaintiff is now suggesting that the Milstein Defendants had some *generalized* intent that Canary Mission would facilitate employment discrimination all over the country for unidentified individuals, that is untrue and unsupported with any factual allegations. But it is still also legally irrelevant, as the statute requires specific intent to violate the statute as to the plaintiff. *See Robinson v. United States*, 100 A.3d 95, 106 (D.C. 2014) (explaining that aiding and abetting "requires not just an act facilitating one or another element, but also a state of mind extending to the entire [statutory violation] . . . . [T]he intent must go to the specific and entire [violation]" including the "predicate" violation). Again, Plaintiff does not and cannot levy such accusations because the Milstein Defendant did not know Plaintiff existed before this lawsuit.

## B.    Plaintiff Does Not Plead a Section 1985 Conspiracy

Plaintiff's imagined "Zionist conspiracy" is a figment of her imagination, grounded in classic antisemitic tropes that Jews must have conspired behind the scenes to harm her and that repercussions of her own actions are not her fault but theirs. Plaintiff cannot

allege any of the elements of conspiracy regarding the Milstein Defendants. A § 1985(3) conspiracy involves two or more persons acting in concert to commit an unlawful act, an agreement among the alleged conspirators, coordinated conduct, overt acts in furtherance of the unlawful objective, and resulting injury. *See, e.g.*, *Brady v. Livingood*, 360 F. Supp. 2d 104 (D.D.C. 2004); *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 38 (D.D.C. 2021); *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004).

None of that is even possible here, where the Milstein Defendants only allegedly donated to the Canary Mission several years ago, and have no other connection to the Plaintiff, her employer, or the other alleged co-conspirators. Putting aside the lack of connection between the Milstein Defendants and other co-conspirators, Plaintiff does not allege any agreement, express or implied, between the Milstein Defendants, the other co-conspirators and *Georgetown*, the only entity that had authority to terminate her employment. Without allegations connecting the Milstein Defendants or co-conspirators to the only actor capable of firing Plaintiff, there can be no meeting of the minds with an unlawful objective. *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) (civil conspiracy claim fails when there are no allegations about "when or how such an agreement was brokered," nor about "the existence of any events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between any of the defendants").

Plaintiff's attempt to characterize a sequence of independent events as "coordinated action" fails. She points only to *temporal* proximity among posts on social media and Georgetown's decision (Opp. 72-73), but the Milstein Defendants are not alleged to have created, directed, disseminated, or amplified any of the content, and are not alleged to have owned, operated, directed or communicated with any person who did.

Temporal proximity among actions taken by unrelated third parties cannot establish an agreement among the Milstein Defendants to accomplish an unlawful purpose. *Acosta Orellana*, 711 F. Supp. 2d at 113.

Still, there are other fatal legal defects. For example, Plaintiff asserts a civil rights conspiracy (Opp. 72), but she does not address the lack of state action. And, when there is an alleged purely private conspiracies under § 1985(3), there must be a deprivation of at least one of two narrow categories of rights: the right to be free from involuntary servitude or the right to travel. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274-78 (1993). Her claim does not relate to either. Plaintiff relies on allegations involving First Amendment rights, Fourteenth Amendment rights, employment opportunities, and Title VII rights, but none of those rights can form the object of a purely private conspiracy under § 1985(3). *See, e.g.*, *Bray v. Alexandria Womens Health Clinic*, 506 U.S. 263, 278 (1993); *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 833-34 (1983). Courts within this District likewise hold that a private conspiracy to deprive a person of First Amendment rights is not actionable absent state action. *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 60 (D.D.C. 2019). Plaintiff also ignores that Title VII rights cannot be enforced through § 1985(3). *See Great Am. Fed. Sav. and Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *Ethnic Emps. of the Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415-16 (D.C. Cir. 1985); *Bowie v. Maddox*, 642 F.3d 1122, 1134 (D.C. Cir. 2011). She does not and cannot grapple with these governing cases, waiving any such argument and defeating her claims.

**C.    Plaintiff Does Address the Clear Statute of Limitations Bar Preventing Liability against the Milstein Defendants**

Plaintiff does not overcome the statute of limitations defect that defeats her aiding and abetting theory against the Milstein Defendants. D.C. Code § 2-1403.16 imposes a one-year limitations period that courts strictly enforce. *Id.* ("A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof."); *Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1117 (D.C. 2004) ("We have strictly construed this one year limitation."). Plaintiff does not dispute that the *only* conduct she attributes to the Milstein Defendants occurred several years ago and at least before 2019. SAC ¶ 81. She instead cites case law concerning the personal liability of supervisors within an employer institution and attempts to show that her claims against administrators at Georgetown are timely. Opp. 103-04. Those arguments have no relevance to the Milstein Defendants, who are not supervisors, not employees of Georgetown, and had no employment relationship of any kind with Plaintiff.

Because any alleged donation predates 2019, the claim against the Milstein Defendants is conclusively time-barred on the face of the SAC. *See Friedman v. Gov't of Abu Dhabi*, U.A.E., 464 F. Supp. 3d 52, 71 (D.D.C. 2020). Plaintiff does not identify conduct within the limitations period and does not identify any continuing act by the Milstein Defendants that could restart or toll the statute. Her response does not address the limitations analysis at all as to the Milstein Defendants and is therefore waived. *Holt*, 316 F. Supp. 3d at 278. Because the statute of limitations is evident from the face of the SAC and unrebutted, it is a suitable basis for dismissal at the motion to dismiss stage.

14

**CONCLUSION**

For these reasons, the Court should dismiss with prejudice.


RESPECTFULLY SUBMITTED this 20th day of November 2025.

/s/    *Mark Pinkert*

Mark Pinkert, Esq. (*pro hac vice*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
203-415-6665
mpinkert@holtzmanvogel.com

Jason Torchinsky, Esq.
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
202-737-8808
jtorchinsky@holtzmanvogel.com


**CERTIFICATE OF SERVICE**

I certify that on November 20, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's electronic filing system, which will send a copy to all counsel of record.


*Mark Pinkert*
Mark Pinkert, Esq.
Counsel for Milstein Defendants


15