IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Aneesa Johnson,

        Plaintiff,

    v.

Georgetown University, *et al*.,

        Defendants.

Civil Action No. 1:25-cv-01540-CRC

**DEFENDANTS JEWISH COMMUNITY FEDERATION OF SAN FRANCISCO AND
THE HELEN DILLER FAMILY FOUNDATION'S
REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS**

Plaintiff's Opposition does not cure the fundamental defects identified in the Motion to Dismiss—it confirms them. After three iterations of her complaint and now a sprawling, rhetoric-heavy Opposition, Plaintiff still cannot link the Defendants Jewish Community Federation of San Francisco and the Helen Diller Family Foundation (hereinafter the "San Francisco Non-Profits") to her former employment at Georgetown University, her claims for wrongful termination, or any alleged wrongdoing in the District of Columbia. She instead asks the Court to overlook the basic limits of personal jurisdiction, disregard settled statutes of limitations and misapply federal civil-rights laws, all based on a single alleged, decade-old charitable donation by two California organizations that have no presence in this forum and no connection to Plaintiff.

Stripped of speculation, innuendo, and a legally irrelevant "investigation" of a third-party website, the Opposition offers no facts showing that these California charities directed any conduct toward the District, communicated with any other defendant, participated in any conspiracy, or engaged in any act capable of supporting liability. Plaintiff's theory would convert a remote, lawful

1

donation into perpetual nationwide jurisdiction and transform protected First Amendment activity into a civil-rights violation. That approach is foreclosed by binding precedent at every turn.

Nor does Plaintiff salvage her claims from the statute of limitations. She does not meaningfully contest—let alone rebut—the showing that both the alleged publication and the alleged donation occurred nearly a decade ago, outside the applicable limitations periods, and that the single-publication rule bars any attempt to revive them. Her silence concedes these dispositive points.

Finally, the Opposition fails to articulate any viable cause of action. The DCHRA cannot be stretched to reach non-employers with no involvement in Plaintiff's workplace, and § 1985(3) cannot be used to repackage an employment grievance into a conspiracy claim that the Supreme Court has explicitly disallowed. Plaintiff alleges no agreement, no class-based animus, and no unlawful objective.

Plaintiff's dispute has nothing to do with these two California charities. Because her claims fail at jurisdiction, timeliness, and substance, the San Francisco Non-Profits respectfully submit that dismissal with prejudice is not only appropriate but required.

## ARGUMENT

### I.  Plaintiff Fails to Establish Personal Jurisdiction

#### A.  The Opposition Offers No Basis for General Jurisdiction

Plaintiff does not even attempt to dispute that the San Francisco Non-Profits are both California nonprofits with no offices, employees, or registration in D.C. Nor does she identify any "exceptional case" that would render them "essentially at home" in the District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Court therefore lacks general jurisdiction over each of them.

### B.  The Long-Arm Statute Provides No Basis for Specific Jurisdiction

In an effort to establish personal jurisdiction in this forum, Plaintiff relies exclusively on D.C. Code § 13-423(a)(4). (Opp'n at p. 18.) That subsection requires (1) a tortious injury in D.C. caused by an out-of-state act, and (2) that the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue" from D.C. goods or services. *Id*. She fails each and every prong.

The San Francisco Non-Profits submitted sworn declarations that they have no offices, facilities, employees, bank accounts, or any presence whatsoever in D.C. (*See* ECF No. 54-2 (Safier Decl.) ¶¶ 5-7; 54-3 (Sisisky Decl.) ¶¶ 3-5.) Plaintiff offers no contrary evidence, and a one-time donation that allegedly occurred almost ten years ago cannot possibly be considered "persistent conduct." (*See* SAC ¶ 16 (alleging San Francisco Non-Profits made a donation to Canary Mission in 2016).)

### C.  Due Process Forbids Jurisdiction Based on a Remote Donation

Even assuming Plaintiff could satisfy the D.C. long-arm statute—she cannot—constitutional due process independently forecloses jurisdiction. Her theory would transform a lawful, one-time donation made in California nearly a decade ago—without any evidence that the alleged donation was purposefully directed at this forum – into nationwide personal jurisdiction wherever an unrelated third party's website can be viewed or wherever Plaintiff later relocates. The Supreme Court has squarely rejected that approach, holding that the "minimum contacts" analysis focuses on the defendant's own conduct with the forum, not the plaintiff's residence or the unilateral acts of others and that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Here, there is no such connection. The San Francisco Non-Profits are California charities alleged to have made an isolated donation years before Plaintiff's employment or her move to the District. There is no evidence that the San Francisco Non-Profits directed, monitored, or controlled Canary Mission's operations—let alone that they knew of, much less "expressly aimed," any activity toward the District. *Baltierra v. W. Va Bd. of Med.*, 253 F. Supp. 2d 9, 14 (D.D.C. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984)); *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *see also GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) (finding no jurisdiction where defendants' websites were accessible in D.C. but not specifically directed there); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (conclusory allegations of conspiracy insufficient to impute contacts).

Unable to show purposeful availment, Plaintiff instead relies on a self-styled "investigation" purporting to identify "extensive targeting" of D.C. residents by Canary Mission. (Poirot Decl. ¶¶ 2-4.) But even taking that declaration at face value, it reports only 148 profiles of D.C. residents out of "more than 18,000" total profiles—less than one percent. (Opp'n at p.11.) That statistic underscores, rather than cures, the jurisdictional gap: a small number of profiles accessible in D.C. does not establish that the San Francisco Non-Profits, years earlier, "aimed" their conduct at the District. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 22 (D.D.C. 2003) (rejecting jurisdiction where charitable contributions to foreign entity were too attenuated to show targeting of U.S. forum). The declaration's focus on Canary Mission's alleged conduct also cannot supply contacts for the San Francisco Non-Profits; jurisdiction must rest on each defendant's own acts, not those of a third party. *See Walden*, 571 U.S. at 284.

Nor does *Calder v. Jones* help Plaintiff. *Calder* requires that the defendant commit an intentional act "expressly aimed" at the forum with knowledge that the harm would be suffered there. *Calder*, 465 U.S. at 789-90. Plaintiff concedes that she lived in Illinois when the Canary Mission dossier was published and when the alleged donation occurred in 2016; her supposed injury arose only years later, after she moved to this District. Those facts defeat any claim that the San Francisco Non-Profits could have foreseen injury in D.C. This case presents the very scenario *Walden* warns against—"random, fortuitous, or attenuated" contacts that cannot sustain jurisdiction. 571 U.S. at 286.

In short, Plaintiff's attempt to manufacture jurisdiction through a post-hoc declaration about Canary Mission's activities does not overcome the fundamental constitutional deficiency: the San Francisco Non-Profits have no contacts whatsoever with the District of Columbia. Personal jurisdiction therefore fails both as a matter of statute and due process.

### D.  Conspiracy Jurisdiction Fails

Plaintiff's attempt to invoke conspiracy jurisdiction fares no better. To establish jurisdiction this way, a plaintiff "must allege (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Jung v. Ass'n of Am. Med. Colls.*, 300 F.Supp.2d 119, 140 (D.D.C. 2004). Courts "often require another element for conspiracy jurisdiction: the defendant's awareness or knowledge of the co-conspirator's acts in the forum." *Youming Jin v. Ministry of State Sec.*, 335 F.Supp.2d 72, 79 (D.D.C. 2004). And as the D.C. Circuit has made clear, "'bald speculation' or a 'conclusionary statement' that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *Jungquist*, 115 F.3d at 1031 (citation omitted). The Circuit has likewise emphasized that "our cases clearly require

unusually particularized pleading [of the elements of conspiracy jurisdiction]." *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 428 (D.C. Cir. 1991) (Silberman, J., concurring in part and dissenting in part).

First, as explained in Section III.B, the SAC alleges no facts showing that the San Francisco Non-Profits ever communicated with, coordinated with, directed, or even knew any other defendant *or Plaintiff*—much less agreed to harm her. Plaintiff's suggestion that all defendants must have been "working together" is exactly the sort of conclusory assertion *Jungquist* rejects. Courts applying this same standard routinely refuse to find conspiracy jurisdiction where the complaint offers no particularized facts showing an agreement or coordinated plan. *See FC Inv. Grp. LLC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008).

Second, Plaintiff does not allege that the San Francisco Non-Profits knowingly participated in, were aware of, or intended to further any co-conspirator's supposed acts in the District. That omission is independently fatal under *Youming Jin*, which requires allegations that the nonresident defendant had "awareness or knowledge" of the alleged in-forum acts. 335 F.Supp.2d at 79. Courts consistently reject conspiracy jurisdiction where the plaintiff alleges no facts showing that the out-of-state defendant even knew of the alleged forum contacts. *FC Inv. Grp.*, 529 F.3d at 1098.

Finally, the temporal gap alone defeats any inference of a conspiracy. The alleged donation occurred years before Plaintiff's employment, her move to D.C., or the supposed "campaign" against her. The SAC acknowledges this significant problem as it relates to the San Francisco Non-Profits while the opposition ignores it. *See* SAC ¶ 377 ("[T]he conduct of Canary Mission and its funders were more remote in time"); Opp'n p. 73 (claiming the "temporal coordination—combined with the shared objective of suppressing Palestinian advocacy through employment retaliation—

demonstrates the existence of an agreement" between Wolff, Shapiro and the Georgetown Defendants only).

Because Plaintiff pleads no agreement, no acts by these defendants in the District, and no plausible basis to impute another entity's conduct to the San Francisco Non-Profits, conspiracy jurisdiction fails as a matter of law. *See Dorman v. Thornburgh*, 740 F.Supp. 875, 878 (D.D.C.1990) (finding no conspiracy jurisdiction where alleged facts did not support conspiracy and noting that "this Court will not allow plaintiffs to assert the fiction of a conspiracy simply in order to establish personal jurisdiction over defendants who clearly have no contact or interest with the District of Columbia"); *Hasenfus v. Corporate Air Servs.*, 700 F.Supp. 58, 62 (D.D.C.1988) (disallowing conspiracy jurisdiction where claims were "unsubstantiated"); *Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 691 F.Supp. 379, 380 (D.D.C. 1987) (holding that conspiracy jurisdiction cannot be upheld where the alleged co-conspirators "do contest their role in any conspiracy").

## II.  <u>Plaintiff's Claims Are Time-Barred</u>

Plaintiff fails to respond to the San Francisco Non-Profits' showing that the single-publication rule bars all claims based on a 2016 donation and a profile published nearly ten years ago. Her Opposition cites no authority suggesting that each website "view" restarts the limitations period. By ignoring the argument entirely, Plaintiff concedes that her claims are untimely. *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Even if the point were not conceded, Plaintiff's claims still fail as a matter of law. As shown in the Motion, the alleged "dossier" on Plaintiff was published in 2015 and has remained continuously available online ever since. (Mot. at 5.) Under the single-publication rule, that constitutes a single act of publication that triggers the statute of limitations upon first posting— not a "continuing violation" renewed each time a website is viewed. *See Jankovic v. Int'l Crisis Grp.,* 494 F.3d 1080, 1087 (D.C. Cir. 2007) (adopting single-publication rule for online materials).

Plaintiff's own Opposition confirms the rule's application. She acknowledges that the dossier "has remained online for almost ten years" (Opp'n at 20), and she alleges no republication, revision, or redistribution within the limitations period—only continued accessibility to the same webpage and new views. (SAC ¶¶ 78, 102, 399.) That is insufficient to reset the statute. *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298-99 (D.C. 2001).

The alleged donation fares no better. Plaintiff does not dispute that any donation by the San Francisco Non-Profits occurred no later than 2016, and stopped in 2018. (*See* ECF No. 54-5). Because both of her claims—under § 1985(3) and the DCHRA—carry limitations periods of one and three years, respectively, they expired long before she filed suit in 2025. *Alder v. Columbia Historical Soc.*, 690 F.Supp. 9, 14 (D.D.C. 1988); D.C. Code § 2-1403.16(a); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff's suggestion that later "effects" of a 2016 donation keep the claim alive misstates the law: "[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)).

///

///

8

In short, Plaintiff's claims are barred both procedurally—through her failure to respond—and substantively, because neither the alleged online publication nor the 2016 donation can revive a cause of action years after the fact.

## III.  Plaintiff Fails to State a Claim

### A.  The DCHRA Aiding-and-Abetting Claim Is Defective

The Opposition does not dispute that DCHRA aiding-and-abetting liability applies only to employers and their agents, typically supervisors and co-workers. *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888-89 (D.C. 1998). At a minimum, aiding and abetting requires participation in the discrimination and seeking to make it successful, *id*. at 888, none of which could be attributed to a charitable donation made years before the alleged discrimination and with no connection to the employer. Having failed to address this argument, Plaintiff has conceded her DCHRA claim lacks merit. *See Hopkins*, 231 F. Supp. 2d at 178.

### B.  The § 1985(3) Conspiracy Claim Fails as a Matter of Law

Plaintiff's Opposition entirely ignores the controlling precedent that forecloses her § 1985(3) claim. As the Supreme Court has held, "§ 1985(3) may not be invoked to redress violations of Title VII." *Great Am. Fed. Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 378 (1979). That decision squarely rejected efforts to repackage alleged employment discrimination as a federal civil-rights conspiracy. The D.C. Circuit has reaffirmed that holding. *See Ethnic Emps. of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (Title VII provides the exclusive remedy for employment discrimination claims). Plaintiff's own theory—that the San Francisco Non-Profits somehow entered an "explicit agreement" to deny Plaintiff of employment—falls squarely within the employment-discrimination framework that these cases hold is non-actionable under § 1985(3).

9

Even putting that dispositive bar aside, Plaintiff fails to plead the essential elements of a § 1985(3) conspiracy. To state a claim under § 1985(3), a plaintiff must plead "'(1) an act in furtherance of (2) a conspiracy (3) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Alexander v. Wash. Gas Light Co.*, 481 F.Supp.2d 16, 31 (D.D.C., 2006) (quoting *Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 470, 479–80 (D.D.C. 1994)). Plaintiff's conspiracy theory fails for multiple reasons.

First, a conspiracy requires a meeting of the minds, and the SAC does not allege that the San Francisco Non-Profits ever communicated with any other defendant—much less agreed with anyone to injure Plaintiff. The only conduct attributed to them is a single donation made in or before 2016 to a New York charity that allegedly "funneled" funds to Canary Mission. (SAC ¶¶ 16, 17.) That isolated act occurred years before the supposed "coordinated campaign" and Plaintiff's 2023 termination. A temporal gap of that magnitude forecloses any plausible inference of concerted action or shared intent. *See Graves,* 961 F. Supp. at 320-321 (finding no showing of coordination between acts of defendants); *Cf. In re Rail Freight Fuel Surcharge Antitrust Litig. (No. I)*, No. CV 11-1049, 2025 WL 1784519, at *23 (D.D.C. June 27, 2025) (finding gaps in defendants conduct "undermine any pattern parallel behavior, and longer gaps do so more severely.").

Second, Section 1985(3) targets conspiracies motivated by invidious discrimination against a protected class. The SAC contains no allegation—let alone factual support—that the San Francisco Non-Profits acted out of racial, ethnic, or religious hostility toward Palestinians, Muslims, African Americans or any other group. Regardless, Plaintiff's conclusory assertions that Canary Mission's content is anti-Palestinian or Islamophobic cannot be imputed to independent donors absent facts showing they shared that motive. Courts routinely dismiss § 1985(3) claims

10

where the alleged conspirators' motives are not plausibly tied to a protected class. *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 32 (D.D.C. 2016); *Melton v. D.C.,* 85 F. Supp. 3d 183, 196 (D.D.C. 2015), *aff'd*, No. 15-7043, 2015 WL 9012019 (D.C. Cir. Oct. 30, 2015); *see also McCreary v. Heath*, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (class-based animus should be narrowly construed).

In short, the Opposition offers neither facts nor law to revive a claim that is foreclosed on multiple fronts. § 1985(3) cannot be stretched to reach routine employment matters, and the SAC pleads no conspiracy, no animus, and no act by the San Francisco Non-Profits connecting them to any alleged deprivation of rights. The claim must be dismissed.

### C. The SAC Fails Plausibly to Allege Any Unlawful Act

Running throughout the SAC and Opposition is Plaintiff's unsupported premise that Canary Mission's website is inherently unlawful, and that any organization that ever provided it funding is therefore knowingly complicit in "criminal" conduct. That assumption collapses under basic First Amendment principles. The SAC itself concedes that the alleged wrongdoing stems from Canary Mission's online "profile" of Plaintiff, which she characterizes as defamatory because it "decontextualizes" her public statements. (SAC ¶¶ 2, 128.) Yet Plaintiff abandoned her defamation claim in the Second Amended Complaint, leaving no predicate tort on which any derivative theory could rest.

More fundamentally, the act of funding or supporting advocacy—even controversial or unpleasant advocacy—is constitutionally protected expression. The Supreme Court has long recognized that the First Amendment "does not permit guilt by association." *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 919 (1982). Donors are not vicariously liable merely because they make a donation or support an organization's general mission. To the contrary, "[f]or

11

liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id*.

The SAC makes no attempt to allege the San Francisco Non-Profits specific intent to further any alleged illegal aim of the Canary Mission. At most, Plaintiff alleges that Canary Mission publicized her own words in a manner she views as damaging to her reputation and employability. However objectionable she finds that speech, it is not illegal, nor does it transform lawful charitable giving into a tort or conspiracy.

## IV.  **Plaintiff's Supporting Declaration Should Be Disregarded**

The Court should disregard Plaintiff's supporting declaration in its entirety, which appears designed solely to manufacture personal jurisdiction over two California charities with no connection to the District. Jurisdictional allegations must be supported by competent, admissible evidence tied to the defendant's own contacts. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–88 (D.C. Cir. 1983). This declaration offers none of the required proof.

First, the declaration provides no facts whatsoever about the San Francisco Non-Profits. It does not assert that they created content, directed content, funded content with knowledge of its use, supervised Canary Mission, communicated with Canary Mission, or engaged in any act touching the District. Instead, the declarant recounts only an after-the-fact purported "investigation" of Canary Mission's website. Evidence about a third party's online activity—even if accurate—cannot establish minimum contacts for unrelated defendants. *Walden* makes clear that jurisdiction cannot rest on the plaintiff's unilateral connections or the conduct of someone else but must arise "out of contacts that the 'defendant *himself*' creates with the forum." 571 U.S. at 284 (emphasis in original). The declaration identifies none.

12

Second, the declaration is methodologically defective and inadmissible for any jurisdictional purpose. It discloses no sources, no methodology, no criteria, and no steps taken to ensure accuracy or reliability. It does not explain how the declarant (whose role in this case remains unclear) identified "D.C. residents," what data was used, whether profiles were verified, whether the profiles were created at any relevant time, or how any activity was connected to the District. Plaintiff's declaration—lacking foundation, methodology, and relevance—is fatally flawed and inadmissible.

Third, even if the declaration were credited (it should not be), it only undermines Plaintiff's jurisdictional theory. According to the declarant, only 148 of more than 18,000 profiles concern alleged District residents—less than one percent—and all of this activity occurred years after the only conduct attributed to the San Francisco Non-Profits. That lopsided ratio confirms the absence of "express aiming" or "purposeful availment" and instead demonstrates a geographically diffuse website with no particular focus on the District. Courts routinely hold that such generalized online activity, accessible everywhere but targeted nowhere, cannot create personal jurisdiction. *See, e.g., Shirlington Limousine and Transp., Inc. v. San Diego Union-Tribune*, 566 F.Supp.2d 1, 6 (D.D.C. 2008); *Gather Workspaces LLC v. Gathering Spot, LLC*, No. 19-2669, 2020 WL 6118439, at \*6-7 (D.D.C. 2020)*; see also GTE New Media Servs. Inc.*, 199 F.3d at 1350; *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713–14 (4th Cir. 2002).

In short, the declaration is irrelevant (because it says nothing about these defendants), unreliable (because it lacks any methodological grounding), and legally insufficient (and only undermine Plaintiff's position). It creates no jurisdictional facts and cannot rescue Plaintiff's deficient showing. The Court should disregard the Declaration in its entirety.

**CONCLUSION**

For the foregoing reasons, the San Francisco Non-Profits respectfully submit that their motion to dismiss should be granted and the SAC be dismissed with prejudice against them. Plaintiff offers rhetoric but no law, facts, or jurisdictional basis to keep the San Francisco Non-Profits in this lawsuit. Because Plaintiff fails to carry her burden on personal jurisdiction, limitations, or the elements of any claim, the Second Amended Complaint should be dismissed with prejudice as to the Helen Diller Family Foundation and the Jewish Community Federation of San Francisco. Further, upon dismissal, the San Francisco Non-Profits respectfully request that the Court grant their separate Rule 11 Motion for Sanctions, as well.

Dated: November 21, 2025                                    Respectfully submitted,


By:      /s/ Kevin P. Dwight
         Joshua N. Drian (DC Bar 1009917)
         Douglas J. Smith (DC Bar 1028963)
         Katherine M. Herman (DC Bar 90019885)
         1050 Connecticut Ave. NW, Suite 600
         Washington, D.C. 20036
         Telephone: (202) 585-6500
         Facsimile: (202) 585-6600
         Email: JDrian@manatt.com
                 Djasmith@manatt.com
                 KHerman@manatt.com

         Kevin P. Dwight (*pro hac vice*)
         One Embarcadero Center, 30th Floor
         San Francisco, CA 94111
         Telephone: (415) 291-7400
         Facsimile: (415) 291-7474
         Email: KDwight@manatt.com

         *Attorneys for Defendants Jewish*
         *Community Federation of San Francisco*
         *and The Helen Diller Family Foundation*

14

## CERTIFICATE OF SERVICE

I certify that on this day, November 21, 2025, a true and correct copy of this document was filed and served via the court's electronic filing system upon all parties who have entered and appeared in the above-captioned case.

*/s/ Douglas J. Smith*
Douglas J. Smith
