IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANEESA JOHNSON,

    *Plaintiff,*

v.

GEORGETOWN UNIVERSITY et al.,

    *Defendants.*

Case No. 1:25-cv-1540 (CRC)

## DEFENDANT ILYA SHAPIRO'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Jason C. Greaves
DCB No. 1033617
jason@binnall.com

Lindsay R. McKasson
DCB No. 1618740
lindsay@binnall.com

Katie L. Raymond
DCB No. 90034758
katie@binnall.com

BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930

*Counsel for Defendant Ilya Shapiro*

Plaintiff's 121-page opposition simply confirms that her Second Amended Complaint is what it always was: a legally frivolous sham. She and her counsel devolve yet again into irrelevant political rhetoric and unfounded accusations, while citing to irrelevant cases, breezing past—or even concealing—the legal requirements for her asserted claims, and ignoring fatal bars.

At its core, Plaintiff's Second Amended Complaint seeks to punish Mr. Shapiro, among others, for criticizing her undisputed public statements. She claims that this criticism is so "unconscionable" that it "transcends all bounds of civilized conduct." SAC ¶ 434. To the contrary, Mr. Shapiro's Constitutionally protected right to criticize Plaintiff is a defining element of the United States as a civilized society. Forcing Mr. Shapiro and the rest of the Defendants to litigate this axiomatic premise is the only unconscionable act before this Court, and it should expeditiously dismiss all claims, with prejudice, and impose attorneys' fees pursuant to the outstanding Rule 11 motions.

## ARGUMENT

### I. Plaintiff misleads the Court in his futile attempt to establish personal jurisdiction.

Astoundingly, Plaintiff attempts to establish personal jurisdiction under a conspiracy theory of jurisdiction, deceptively citing to a Second Circuit case to avoid the D.C. Circuit's heightened pleading requirements for such a theory. *See* Doc. 63 at 21. It is well-established in the D.C. Circuit that a plaintiff "must plead *with particularity* overt acts within the forum taken in furtherance of the conspiracy," and "bald speculation or a conclusory statement that individuals are co-conspirators is

insufficient to establish personal jurisdiction under a conspiracy theory." *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008) (quoting *World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)) (cleaned up) (emphasis added), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 891 (D.C. Cir. 2021).

It is disappointing, if unsurprising, that Mr. Hamed would so blatantly attempt to pull the wool over the eyes of this Court. He does not cite to the controlling case law, because *all he has* is bald speculation and conclusory statements. Plaintiff has not alleged any action by Mr. Shapiro in D.C. in furtherance of this supposed conspiracy or to show any agreement or intent to engage in any such conspiracy— certainly not with particularity, as required in this Court.

To cite the applicable standard is fatal, but that is Mr. Hamed's obligation as an officer of this Court and under Rule 3.3(3) of the D.C. Rules of Professional Conduct—to bring to the attention of the tribunal controlling adverse authority. This omission was plainly deliberate, as Mr. Hamed specifically references that the conspiracy theory of personal jurisdiction is "recognized by the D.C. Circuit" and then proceeds to cite only to a Second Circuit case that does not mention any heightened pleading standard. *See* Doc. 63 at 21.

Plaintiff's invocation of the *Calder* effects test to establish personal jurisdiction is equally futile. *Calder* requires intentional acts "expressly aimed" at the forum, causing harm the defendant knows is likely suffered there. *Calder v. Jones*, 465 U.S.

783, 789–90 (1984). Application of *Calder* in the internet context *requires* proof that the out-of-state defendant's internet activity is *expressly targeted* or directed to the forum state. *Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 216–17 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262–63 (4th Cir. 2002)) (emphasis added).

Mr. Shapiro's single re-post from his Virginia home does not even approach this requirement. To hold otherwise would subject any person to personal jurisdiction in D.C. who publicly criticizes a D.C.-based university, or Congress, or even the President of the United States.

The opposition's assertion that Mr. Shapiro "intentionally interfered with Ms. Johnson's employment" is rank supposition. The re-post shared public information about Plaintiff already posted by Ms. Wolff, without any call to action or directive. Doc. 47 ¶ 131. Unlike *Calder's* libelous article that focused on California activities, this re-post had no "brunt" in D.C. Plaintiff's wild and repeated conclusions about Mr. Shapiro's racial animus and his supposed call to action or pressure campaign to get Plaintiff fired are entitled to zero weight. D.C. Circuit "counsels against drawing unsupported inferences—even if reasonable—when analyzing whether defendants intended to cause effects in the forum state." *Cengiz v. Salman*, No. 20-3009 (JDB), 2022 WL 17475400, *12 (citing *Livnat v. Palestinian Authority*, 851 F.3d 45, 57 (D.C. Cir. 2017)). Plaintiff's inferences are far from reasonable.

## II.     Plaintiff fails to state any claim against Mr. Shapiro.

Setting aside the fatal jurisdictional defect, Plaintiff's substantive claims remain ludicrous on their face. Her arguments rely on conclusory labels such as

"defamatory," "racially motivated," and "conspiracy" without plausible facts tying Mr. Shapiro to any discrimination or harm. Indeed, Plaintiff cannot and does not allege any basis for Mr. Shapiro to have been aware of her race when he made his re-post. All claims fail under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plausible facts).

> a. **Plaintiff still hates "Zionist" Jews and therefore republishing her tweets cannot paint her in a false light.**

Tellingly, Plaintiff continues to skirt the issue of how the republication of her prior tweets can be a false portrayal. She cries once again about being associated with tweets made as a "teenager" and "college freshman," yet never once disavows them. She has never once apologized for them or even claimed to have changed her views. Which begs the question: even if Mr. Shapiro knew how old Plaintiff was when she tweeted her hatred for Jews (he did not, *see* Doc. 52-2 at ¶ 13), how could he have actual knowledge, or a "high degree of awareness," that republishing her tweets would portray her in a false light if there is no record of Plaintiff having changed her opinion of Jews? Indeed, the polemic rhetoric of Plaintiff's pleadings in this case and of her chosen counsel make it clear that she stands by her vile tweets.

Plaintiff also utterly fails to address, and therefore concedes that her false light claim is precluded by D.C.'s one-year statute of limitations. *Holt v. Walsh* Grp., 316 F. Supp. 3d 274, 278 (D.D.C. 2018) ("'[W]hen a [litigant] files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.'" (quoting *Lockhart v. Coastal Int'l Sec.*, 905

F. Supp. 2d 105, 118 (D.D.C. 2012)). Therefore, the False Light claim must be dismissed.

### b.    Plaintiff cannot turn a frivolous IIED claim into a weapon.

Plaintiff's contention, that criticizing her public statements—without altering them and without adding a false word—constitutes "extreme and outrageous conduct" that "transcends all bounds of civilized conduct" remains wildly frivolous. This transparent attempt to make criticism actionable if the target can claim to be part of a "protected class" is dangerous and should be rejected by this court.

Plaintiff's claim entirely depends on the offensive accusation that Mr. Shapiro "targeted" her because of racial animus. Mr. Shapiro had no idea who Plaintiff was, much less her race. Doc. 52-2 at ¶ 13. Despite their best efforts—and hundreds of pages of meandering pleadings—Plaintiff and her counsel cannot gloss over the fact that her tweets were not "pro" anything. They were hate-filled invective against Jewish people. Mr. Shapiro was not criticizing Plaintiff's tweets because they were "pro-Palestine" but because they were anti-Jewish. He was not criticizing Georgetown for hiring a Palestinian—he had no reason to know her nationality—but for hiring someone who expressed bigoted hatred for Jewish students, over which she would have authority in her new role.

Mr. Shapiro had no reason to believe Georgetown would take any action in response to his comment—not only because he left Georgetown on bad terms, *see* Doc. 52-2 at ¶¶ 8–9—but because antisemitism has become all too common in the academies, *see* Doc. 52 at 4–5, nn. 7–8. His re-post was as much a warning to potential

Georgetown students as it was an indictment of the institution. To find this speech to be actionable as IIED, simply because Plaintiff makes scurrilous claims of discrimination, would open floodgates of litigation and would intolerably chill free speech. This appears to be Plaintiff's purpose, and this Court should not entertain it.

  c.  **Plaintiff had no contract with which Mr. Shapiro could have interfered.**

The opposition insists on a "valid contract," but D.C. law consistently holds at-will employment relationships do not create contractual rights that support tortious interference claims against third parties. *McManus v. MCI Commc's Corp.*, 748 A.2d 949, 957 (D.C. 2000) ("It is clear that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship") (citing *Bible Way Church v. Beards*, 680 A.2d 419, 432–33 (D.C. 1996)). Multiple decisions in D.C. underscore that a plaintiff who is employed at-will cannot establish tortious interference by arguing that a third party caused termination because there is no reasonable expectation of continued employment with which to "interfere." *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 23 (quoting *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997)).

Even if Plaintiff's probationary offer rose to the level of a contract, Mr. Shapiro had no knowledge of any terms of such contract, and his prior affiliation with the university does nothing to change that. And the opposition's conclusory assertion of "malicious motive" is drivel. There are no facts that show animus on the part of Mr. Shapiro or intent to breach. Plaintiff offers only speculation, rather than concrete allegations, to support a claim that Mr. Shapiro acted with malicious intent or

knowledge of her employment relationship, which does not meet the pleading standards for improper interference.

Furthermore, there is no factual basis to conclude that a single re-post—as opposed to Plaintiff's admitted tweets—caused Georgetown to depart from its own procedures or to terminate her. The allegations fail to connect Mr. Shapiro's conduct with the adverse action in any way.

### d.    Plaintiff ignores the required elements for aiding and abetting.

Plaintiffs' aiding-and-abetting claim under D.C. Code § 2-1402.62 fails as a matter of law and must be dismissed with prejudice. There is no underlying D.C. Human Rights Act ("DCHRA") violation. An aiding and abetting violation requires a primary unlawful discriminatory practice by Georgetown or another principal actor. *Gatling v. Jubilee Housing, Inc.,* 2022 WL 227070, at *6 (D.D.C. Jan. 25, 2022). The SAC pleads no such violation. It alleges no policy, custom, or act by Georgetown that discriminated against Plaintiff because of her race, religion, national origin, or any other protected characteristic under the DCHRA. Conclusory assertions of a "discriminatory campaign" and Georgetown's purported capitulation to external pressure do not state a primary violation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

A re-post of Plaintiff's admitted tweets doesn't "compel" discrimination. No facts support an inference that Mr. Shapiro's conduct materially furthered any alleged discrimination or had the effect of compelling Georgetown's actions. Mr. Shapiro had no knowledge of Georgetown's actions and no intent to aid termination.

7

Moreover, Plaintiff never alleges that Mr. Shapiro knew Georgetown would take adverse action, much less that he subjectively intended to bring it about. Plaintiff's attempt to tie Mr. Shapiro's conduct to the university's decisions via a speculative "causal chain" is not supported by any factual allegations. Such threadbare, predictive allegations are precisely what *Twombly* and *Iqbal* condemn.

e.    **Plaintiff ignores the requirements of § 1985(3).**

The opposition's "comprehensive conspiracy" is pure conclusion as no facts allege agreement or overt acts by Mr. Shapiro. Plaintiff has conceded the great majority of Mr. Shapiro's arguments against her claim by failing to address them. *See Biden v. United States Internal Revenue Serv.*, 752 F. Supp. 3d 97, 112 (D.D.C. 2024) ("When a plaintiff fails to address arguments made in a motion to dismiss, the Court may treat those arguments as conceded.") (citation omitted).

Plaintiff's theory rests solely on the timing of posts and conclusory allegations of shared objectives, which courts routinely reject as insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Plaintiff's "temporal coordination" claim is completely specious. Mere hours between a viral post and a re-post does not create any inference of facts rising to the level of conspiracy as such timing is the default operation of the platform and supports no inference of conspiratorial agreement. Mr. Shapiro independently re-posted public content, with no communication or shared objective. Alleging that posts occurred within proximity does not establish a "meeting of the minds" or any unlawful conspiracy. *Black Lives Matter D.C. v Trump*, 544 F. Supp. 3d 15, 39 (D.D.C. 2021)

(merely alleging that the defendant . . . communicated, without alleging any details of those communications that suggest an unlawful agreement, cannot justify inferring the requisite agreement for a § 1985(3) conspiracy). The pleadings do not contain any factual material showing, much less alleging, Mr. Shapiro communicated, planned, or acted jointly with other defendants. Mr. Shapiro knew nothing of Plaintiff or Ms. Wolff and the re-post expressed no bias against protected classes. Doc. 34-10 ¶¶ 11–13. Without allegations of actual communication, joint planning, or overt acts with a discriminatory motive, these claims are entirely baseless.

## III.    Amendment would be futile.

Plaintiff should not be given any further leave to amend. "The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court, but leave should be freely given unless there is a good reason, such as futility, to the contrary." *Banner Health v. Burwell*, 55 F. Supp. 3d 1, 8 (D.D.C. 2014) (cleaned up). A court may deny leave to amend when "there is sufficient reason, such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citations omitted).

Plaintiff has already demonstrated repeated failure to cure her deficiencies. The SAC contains roughly the same allegations as the prior complaints. And like the FAC, the SAC includes dozens of conclusory legal assertions cast as factual allegations, as well as page after page of irrelevant polemic that should be stricken

under Rule 12(f). *See generally* SAC ¶¶ 23–48 (history of anti-Muslim sentiment and racism against Black Americans); ¶¶ 176–501 (repeating conclusory allegations regarding comparators and asserting discriminatory animus on the part of institutional and individual actors with no factual support). Therefore, leave to amend would be utterly futile. Any further opportunity for Plaintiff to amend will simply extend the process-as-punishment chilling of free speech that appears to be Plaintiffs goal. All of Plaintiff's claims against Mr. Shapiro, therefore, should be dismissed with prejudice.

## CONCLUSION

For these reasons and the reasons stated in his memorandum in support of this motion, Defendant Shapiro respectfully requests the Court grant his motion to dismiss all claims against him in this matter with prejudice, and to impose sanctions pursuant to Mr. Shapiro's outstanding Rule 11 motions.

Dated: November 21, 2025

Respectfully submitted,

*/s/ Jason C. Greaves*

Jason C. Greaves, DCB No. 1033617
Lindsay R. McKasson, DCB No. 1618740
Katie L. Raymond, DCB No. 90034758
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
lindsay@binnall.com
katie@binnall.com

*Counsel for Defendant Ilya Shapiro*

10

## CERTIFICATE OF SERVICE

I certify that on November 21, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jason C. Greaves*
Jason C. Greaves

*Counsel for Defendant Ilya Shapiro*

11