**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ANEESA JOHNSON** | |
| *Plaintiff,* | Case No. 1:25-cv-01540 |
| v. | |
| **GEORGETOWN UNIVERSITY**, et al., | HON. CHRISTOPHER R. COOPER |
| *Defendants.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT RACHEL JESSICA WOLFF'S
<u>RULE 11 MOTION FOR SANCTIONS</u>**

Ms. Wolff's Motion for Sanctions, Doc. 75, is the fifth Rule 11 motion filed against Ms. Johnson and her counsel in this case. It was filed on February 18, 2026—the night before this Court heard oral argument on all pending motions to dismiss and the four previously-filed motions for sanctions. Doc. 75. Wolff's motion was not among the four sanctions motions (Docs. 34, 50, 55, 57) the Court calendared for argument on January 14, 2026. It was not briefed alongside those motions. It was not subject to the Court's ordered briefing schedule. And it was filed at a time designed to ensure that undersigned counsel could not meaningfully respond before the Court took the matter under advisement.

This is not a coincidence. Wolff's counsel at Gibson, Dunn & Crutcher LLP first threatened sanctions in a procedurally deficient July 17, 2025 demand letter. They sent a second similarly deficient demand letter on September 11, 2025. But they did not formally serve the actual Rule 11 motion—as required to trigger the 21-day safe harbor under Rule 11(c)(2)—until January 27, 2026, thirteen days *after* the Court set the February 19 hearing date. The 21-day safe harbor period expired on February 17. Wolff filed the very next day,

February 18. Gibson Dunn had seven months to formally commence this process. It chose to wait until the precise moment that would deprive Ms. Johnson of any meaningful opportunity to respond before the Court took the matter under advisement.

This calculated timing is itself sanctionable. But even setting aside the timing, the Motion should be denied on the merits for the same reasons this Court should deny the four prior Rule 11 motions—reasons Ms. Johnson already set forth at length in her Omnibus Response in Opposition to Defendants' Rule 11 Motions for Sanctions, Doc. 62, and that she incorporates in full.

## I. BACKGROUND

1.      Wolff's counsel at Gibson, Dunn & Crutcher LLP has been threatening sanctions against Ms. Johnson and undersigned counsel since July 2025. On July 17, 2025, Gibson Dunn sent a seven-page letter demanding that undersigned counsel "dismiss with prejudice the claims you filed against Ms. Wolff" within six days, warning that counsel would "be subject to all sanctions and remedies available under Rule 11 and the D.C. Anti-SLAPP Act."[1] Ben Dor Decl., Ex. C. That letter addressed the First Amended Complaint ("FAC") and raised the same arguments—the First Amendment bar, the statute of limitations, pleading deficiencies, and alleged improper purpose—that Wolff now raises in her Motion.

2.      Instead of filing a Rule 11 motion at that time, Wolff's counsel waited. Meanwhile, Ms. Johnson sought and received leave to amend. Doc. 44 (Aug. 19, 2025 Minute Order). On September 11, 2025, Gibson Dunn sent a second letter—this time seven pages addressing the SAC—again demanding dismissal of all claims against Ms. Wolff and threatening sanctions. The September 11 letter expressly acknowledged it was raising the

---

[1] This was after counsel opposed Wolff's request for sanctions under the D.C. Anti-SLAPP Act as improperly raised in this federal forum, a view this Court then adopted. *See* Doc. 26; July 18, 2025 Minute Order.

same deficiencies identified in the July letter, stating: "[y]our failure to respond to our Rule 11 letter on the FAC, and your decision to drop the FAC's defamation, employment discrimination, and conspiracy claims against Ms. Wolff, support Rule 11 relief that the SAC does not cure." That letter demanded dismissal by September 15 or, alternatively, and offered to meet and confer on September 16, 17, or 18.

3.     On October 6, 2025, undersigned counsel responded in writing, explaining that "we have carefully considered your position and we continue to believe that our filing is proper." Ben Dor Decl., Ex. E.

4.     Between September and October 2025, every other Defendant that intended to seek sanctions served their safe harbor motions and filed them with the Court. Defendant Shapiro filed his first Rule 11 motion on July 15, 2025. Doc. 34. The Milstein Defendants, San Francisco Defendants, and Shapiro filed their subsequent motions by October 6, 2025. Docs. 50, 55, 57. Ms. Johnson filed her comprehensive Omnibus Response on October 22, 2025. Doc. 62. Defendants filed their replies by November 5, 2025. Docs. 67, 68, 69.

5.     Despite having identified every alleged deficiency no later than September 11, 2025—and despite every other defendant having filed their sanctions motions by October 6, 2025—Wolff did nothing. She did not serve the actual Rule 11 motion. She did not file anything. She waited.

6.     On January 14, 2026, the Court scheduled oral argument for February 19, 2026, specifically identifying the motions to dismiss (Docs. 51, 52, 53, 54, 56) and the sanctions motions (Docs. 34, 50, 55, 57) for argument. Minute Order of Jan. 14, 2026.

7.     Thirteen days later, on January 27, 2026—for the first time—Gibson Dunn formally served the actual Rule 11 motion on undersigned counsel, accompanied by a two-

page cover letter describing this as "a final effort to persuade you to dismiss the frivolous claims" and referring to "our July 17, 2025 Rule 11 notice letter" and "our September 11, 2025 Rule 11 notice letter." Ben Dor Decl., Exs. A, G. The 21-day safe harbor period expired on February 17, 2026.

8.      One day later—on February 18, 2026, the eve of oral argument—Wolff filed the Motion. Doc. 75.

9.      On February 19, 2026, the Court heard argument on all pending motions and took them under advisement. Minute Entry for proceedings held on 2/19/2026.

## II.    DISCUSSION

Wolff's Motion should be denied for three independent reasons. First, it was filed in bad faith, timed to prejudice Ms. Johnson and ambush the Court. Second, it is entirely duplicative of the four motions already briefed and argued. Third, the substantive arguments are meritless for the reasons set forth in Plaintiff's Omnibus Response, Doc. 62, which Plaintiff incorporates in full.

### A.  Wolff's Motion Was Filed in Bad Faith and Timed to Maximize Prejudice

The timing of this Motion betrays its true purpose. Wolff's counsel identified the alleged deficiencies in the SAC no later than September 11, 2025, when Gibson Dunn sent its second Rule 11 letter. Ben Dor Decl., Ex. D. Every other defendant that intended to seek sanctions did so by October 6, 2025. Docs. 34, 50, 55, 57. Wolff waited more than four additional months. During that time, all four sanctions motions were fully briefed. *See* Docs. 62, 67, 68, 69. The motions to dismiss were fully briefed. *See* Docs. 63, 70, 71, 72, 73, 74. And the Court set oral argument for February 19, 2026. Minute Order of Jan. 14, 2026.

Only then—with the hearing imminent and briefing closed—did Wolff file. This is not zealous advocacy. This is tactical ambush, designed to create the false impression of an overwhelming wave of sanctions motions while depriving Ms. Johnson of the ability to respond in time.

This conduct contravenes both the letter and spirit of Rule 11. The Advisory Committee Notes to the 1993 amendments emphasize that "ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment. The "inappropriate paper" Wolff challenges is the SAC, filed on August 23, 2025. Wolff's own September 11, 2025 letter—sent nineteen days after the SAC was filed—identified every alleged Rule 11 deficiency now raised in her Motion and expressly stated that the SAC was "sanctionable." *See* Ben Dor Decl., Ex. D. Yet Wolff did not formally serve the actual Rule 11 motion until January 27, 2026—over five months later. Then Wolff contends her Motion was triggered by Plaintiff's opposition to the motion to dismiss rather than the SAC itself, but that argument is foreclosed by Wolff's own correspondence, by the text of Rule 11, and by the weight of authority holding that the promptness clock runs from the filing of the paper alleged to violate Rule 11(b), not from subsequent advocacy defending that paper. If the alleged defects were as "fatal" and "clear" as Wolff insists—and her September 11 letter certainly treated them as such—then the safe harbor motion should have been served promptly after September 11, 2025, as every other Defendant managed to do.

The Advisory Committee Notes also caution that Rule 11 motions "should not be employed . . . to intimidate an adversary into withdrawing contentions that are fairly debatable." *Id.* Filing a fifth, duplicative sanctions motion on the eve of argument—when

undersigned counsel, a solo practitioner, was already defending against four substantively identical motions from teams of attorneys at well-resourced firms—is the definition of intimidation through litigation.

### 1. *The Timing Raises a Strong Inference of Improper Motive*

In *Adhikari v. Daoud & Partners*, No. 4:09-cv-1237, 2017 WL 5904782 (S.D. Tex. Nov. 30, 2017), the court refused to entertain a Rule 11 motion that duplicated arguments raised in a pending summary judgment motion, finding that the "baselessness, onerousness, and inconvenience raise the inference of improper motive." *Id.* at *9. The court emphasized that "simply waiting for the resolution of their summary judgment motion would have mooted much of their Rule 11 motion," and that the filing "placed an onerous burden on Plaintiffs at a time when the intensity of the litigation was at its peak." *Id.* The court concluded that the defendants' "effort to impugn the integrity of Plaintiffs' counsel . . . bolsters the inference of improper motive." *Id.*

Wolff's motion is *Adhikari* on steroids. There, the defendants at least filed their sanctions motion while the dispositive motion was still pending. Here, Wolff filed her motion *the night before oral argument* on five pending motions to dismiss and four pending sanctions motions—all of which raised the same arguments. In *Adhikari*, the court concluded the motion "made the litigation markedly less fair and more costly, likely for improper reasons." *Id.* The same conclusion is inescapable here.

### 2. *The Safe Harbor was Engineered for Maximum Prejudice*

"The safe-harbor provisions were added to Rule 11 to 'reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect,' while 'providing immunity from sanctions through self-

regulation.'" *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 397 (4th Cir. 2004) (en banc) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997)). This purpose is subverted when a party uses the safe harbor not to encourage resolution, but to engineer maximum surprise. Gibson Dunn sent two informal demand letters (July 17, 2025 and September 11, 2025) that did not trigger the safe harbor. It then waited over four months before formally serving the actual motion on January 27, 2026. This timing was not incidental. The January 27 service date was calculated so that the 21-day safe harbor would expire on February 17—one day before oral argument. Wolff filed on February 18.

This was no accident. The hearing date was set on January 14, 2026. Gibson Dunn had known since at least September 2025 that it intended to pursue sanctions. The only reason to wait until January 27 to serve the safe harbor letter was to synchronize the 21-day expiration with the hearing date. The safe harbor was not used to encourage resolution; it was used to ambush.

### 3. The July and September Letters Did Not Constitute Formal Safe Harbor Service

Wolff's Motion asserts that undersigned counsel was on notice of the alleged deficiencies since July 2025. Doc. 75-1 at 3–5. This is a red herring. Under Rule 11(c)(2), the safe harbor period "begins to run only upon service of the motion." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment (emphasis added). The overwhelming weight of authority holds that an informal warning letter—no matter how detailed—does not trigger the 21-day safe harbor.

In *Penn, LLC v. Prosper Business Development Corp.*, 773 F.3d 764 (6th Cir. 2014), the Sixth Circuit held that a detailed letter threatening Rule 11 sanctions did not satisfy the safe harbor requirement because Rule 11 "specifically requires formal service of a motion." *Id.* at

767. The court explained that "[p]ermitting litigants to substitute warning letters, or other types of informal notice, for a motion timely served pursuant to Rule 5 undermines [Rule 11's] goals," because "[w]hereas a properly served motion unambiguously alerts the recipient that he must withdraw his contention within twenty-one days or defend it against the arguments raised in that motion, a letter prompts the recipient to guess at his opponent's seriousness." *Id.* at 767-68. The Second, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits are in accord. *See id*. at 769.

Gibson Dunn's July 17, 2025 and September 11, 2025 letters were precisely the kind of informal warning letters that do not trigger the safe harbor. They were demand letters threatening sanctions—not formal service of a Rule 11 motion. Ben Dor Decl., Exs. C, D. The July letter demanded dismissal within six days and stated that counsel would "be subject to all sanctions and remedies available under Rule 11". The September letter demanded dismissal by September 15 and threatened "sanctions under local and disciplinary rules as well as Rule 11." Neither letter attached the actual Rule 11 motion that Wolff eventually filed.

This matters for two reasons. First, it defeats any argument that Wolff's counsel satisfied the promptness requirement through the July and September letters. Those letters did not start the safe harbor clock, and Wolff's counsel knew it—which is precisely why Gibson Dunn served the actual motion for the first time on January 27, 2026. Second, it exposes the calculated nature of the delay. Gibson Dunn had seven months—from July 17, 2025, through February 18, 2026—to formally commence the safe harbor process. It chose to wait until exactly the moment that would cause maximum prejudice: thirteen days after the Court set the hearing date, timed so the 21-day safe harbor would expire the day before oral argument.

The Advisory Committee Notes contemplate that "counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation *before proceeding to prepare and serve a Rule 11 motion*." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment (emphasis added). Gibson Dunn gave informal notice—twice—and then waited four additional months before serving the actual motion. This is not the prompt, good-faith process the Advisory Committee envisioned. It is tactical manipulation of the safe harbor provision.

### 4. *Wolff's Own Letters Refute Her Timeliness Argument*

In her oral argument, Wolff contended that her Motion is timely because the "inappropriate paper" was not the SAC but rather Plaintiff's opposition to Wolff's motion to dismiss (Dkt. 63), which purportedly revealed for the first time that Plaintiff would not voluntarily dismiss the claims against Wolff. This argument is refuted by Wolff's own correspondence.

The Advisory Committee Notes state that "ordinarily the motion should be served promptly after the inappropriate paper is filed." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment. The "inappropriate paper" in every Rule 11 case is the pleading, motion, or other paper alleged to violate Rule 11(b). Here, the paper Wolff challenges is the SAC—filed on August 23, 2025. Wolff does not seek sanctions for Plaintiff's opposition brief. She seeks sanctions for filing and maintaining the SAC. Doc. 75-1 at 1 ("All six claims against Rachel Jessica Wolff in Plaintiff's Second Amended Complaint (SAC) clearly meet the stringent test for Rule 11 sanctions.")

Wolff's own letters confirm that she identified the SAC as the "inappropriate paper" months before filing her Motion:

- On July 17, 2025—before the SAC was even filed—Gibson Dunn sent a seven-page letter identifying the FAC's alleged deficiencies and demanding dismissal, warning that counsel would "be subject to all sanctions and remedies available under Rule 11." Ben Dor Decl., Ex. C. Every substantive argument in the Motion—First Amendment bar, statute of limitations, pleading deficiencies, improper purpose—appeared in this letter.

- On September 11, 2025—nineteen days after the SAC was filed—Gibson Dunn sent a second seven-page letter expressly targeting the SAC, stating that "[t]he SAC's claims against Ms. Wolff contain the same defects we identified in the FAC" and demanding dismissal by September 15. Ben Dor Decl., Ex. D. The letter identified the SAC as sanctionable, stated that "the SAC is also sanctionable for several independent reasons," and threatened "sanctions under local and disciplinary rules as well as Rule 11".

Gibson Dunn thus identified every alleged Rule 11 deficiency in the SAC no later than September 11, 2025. The SAC was—in Wolff's own words—the "inappropriate paper." And Gibson Dunn knew it was "inappropriate" within nineteen days of its filing. Yet it waited over five months to serve the actual Rule 11 motion. Under the Advisory Committee's promptness standard, that delay is fatal. *See*, *e.g.*, *Noonan v. CACH, LLC*, No. 4:15-cv-1305, 2016 WL 1641405 (E.D. Mo. Apr. 26, 2016) (denying Rule 11 motion as untimely where it was not filed until after the case was dismissed, citing the Advisory Committee Notes' promptness requirement and collecting circuit authority).

### 5. *An Opposition to a Motion to Dismiss is Not a New "Inappropriate Paper."*

Wolff's attempt to recharacterize Plaintiff's opposition brief (Dkt. 63) as the "inappropriate paper" misapprehends the scope of Rule 11. Rule 11(b) applies to "a pleading, written motion, or other paper" that is "present[ed] to the court" by "signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b). An opposition to a motion to dismiss is not a new "paper" asserting new claims—it is advocacy in defense of the existing complaint. The complaint is the paper that contains the claims Wolff alleges are sanctionable. The opposition merely defends those claims against Wolff's motion to dismiss. The Advisory Committee's promptness requirement runs from the filing of the paper alleged to violate Rule 11(b)—here, the SAC.

The distinction matters. Under the Advisory Committee's promptness standard, this delay is fatal. The Notes emphasize that "ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment. Courts applying that standard have rejected efforts to restart the clock with each new filing when the movant knew from the outset that it viewed the complaint as sanctionable. In *Waldrop v. Discover Bank (In re Waldrop)*, No. 15-14689-JDL, 2017 WL 4857425 (Bankr. W.D. Okla. Oct. 25, 2017), for example, Discover's counsel served Rule 11/Rule 9011 safe-harbor letters shortly after the complaint but then waited roughly eighteen months—through a motion to dismiss and summary judgment practice—before filing a sanctions motion; the court held the motion untimely, explaining that counsel "should have pursued that motion by filing it shortly after the expiration of the twenty-one (21) day safe harbor" and admonishing that the movants "would be better served by reexamining their own litigation tactics rather than condemning plaintiff's counsel for her litigation tactics." *Id.* at *7.

So too here. Wolff's counsel identified every alleged deficiency in the SAC by September 11, 2025. Every other Defendant that intended to seek sanctions served and filed their Rule 11 motions by October 6, 2025. Wolff had no reason to wait for Plaintiff's opposition to the MTD to learn what she already knew. Her own September letter stated unequivocally that the SAC was sanctionable. The opposition brief told her nothing new.

## B.  The Motion is Entirely Duplicative and Adds Nothing to the Record

Wolff's Motion is substantively indistinguishable from the four sanctions motions or the motions to dismiss already before the Court. Every argument Wolff raises—every one— was previously made by other Defendants, opposed by Ms. Johnson, and replied to:

| Wolff's Argument (Doc. 75) | Identical Arguments in Prior Motion(s) | Plaintiff's Response |
|---|---|---|
| First Amendment bars tort claims (*Florio*) | Docs. 52 | Doc. 63 at § F |
| Statute of limitations (D.C. Code § 12-301) | Docs. 34, 50, 52, 53, 55, 57 | Doc. 63 at § F |
| Pleading deficiencies (tort claims) | Docs. 34, 50, 52, 53 | Doc. 63 at § E |
| Aiding-and-abetting claim is frivolous | Docs. 51, 52, 53, 54, 55, 57 | Doc. 63 at § B |
| §§ 1981 and 1985(3) claims are frivolous | Docs. 34, 50, 51, 52, 53, 54, 57 | Doc. 63 at § C. |
| Improper purpose—anti-Zionist animus | Docs. 34, 50, 55, 57 | Doc. 62 at § C |
| Counsel's LinkedIn posts show bias | Docs. 34, 50, 55, 57 | Doc. 62 at § C |
| Attorneys' fees and costs | Docs. 34, 50, 55, 57 | Doc. 62 at n.1 |

Wolff cites no new authority. She presents no new factual allegations. She offers no legal theory that was not already before this Court. Her motion is, in substance, a cut-and-

paste of arguments the Court has already received five times over—from the MTD briefing and the four prior sanctions motions.

Rule 11 motions "should not be used to convert a disagreement over the factual allegations and legal arguments in a plaintiff's complaint into a sanctions dispute." *Betz v. Global Telesourcing, LLC*, No. 21-cv-1320 (BAH), 2021 WL 5865384, at *4 (D.D.C. Dec. 10, 2021) (cleaned up). Wolff's Motion does exactly this—taking Rule 12 arguments that are already pending and repackaging them as Rule 11 sanctions.

In this circuit, "in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation." *Danik, Inc. v. Hartmarx Corp.*, 875 F.2d 890, 895 (D.C. Cir. 1989), *aff'd in part, rev'd in part on unrelated grounds*, 496 U.S. 384 (1990) (quoting Fed. R. Civ. P. 11, Advisory Committee's Note to 1983 Amendment). "That is surely the better practice." *Id.* Filing a fifth Rule 11 motion after briefing was complete, on the eve of argument, while the MTDs remain pending—that is emphatically not the better practice.

## C. The Motion Fails on the Merits

Plaintiff incorporates by reference in full her Omnibus Response in Opposition to Defendants' Rule 11 Motions for Sanctions, Doc. 62. Every substantive argument in Wolff's Motion was addressed there. Without waiving that incorporation, Plaintiff briefly addresses Wolff's principal claims.

### 1. *The Motions to Dismiss are the Proper Vehicle for Wolff's Arguments, not Rule 11*

The entirety of Wolff's Rule 11(b)(2) argument, Doc. 75-1 at 7-13, is a recitation of her motion-to-dismiss briefing. *Compare* Doc. 75-1 at 7-13 *with* Doc. 56-1 (Wolff MTD). Rule 11 was not intended as a fee-shifting device and should not be used to test the legal sufficiency of the pleadings. "Sanctions were premature. The defendants had not filed a motion to dismiss

or a motion for summary judgment." *Thomas v. Evans*, 880 F.2d 1235, 1243 n.11 (11th Cir. 1989). Here, it is even worse: the motions to dismiss were not only filed—they were argued and taken under advisement on February 19, 2026. If the Court grants the MTDs, the sanctions question is moot. If it denies them, the claims are by definition non-frivolous.

### 2. Ms. Johnson's Claims Seek to Extend Existing Law, Which Rule 11(b)(2) Expressly Protects

Rule 11 does not authorize sanctions where claims are "warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). It is "entirely possible to mount a non-frivolous argument against what might be considered settled . . . law." *Holmes v. FEC*, 823 F.3d 69, 74 (D.C. Cir. 2016). As set forth in the Omnibus Response, this case seeks to expand accountability for discriminatory doxing campaigns—a pervasive modern phenomenon for which the law has not yet caught up. Doc. 62 at § B; *see also* Declaration of Jonathan Wallace ¶¶ 13–15; Hamed Decl. ¶¶ 17–22.

Even if Wolff prevails on her MTD, that does not make the claims *sanctionable*. The distinction between a losing argument and a frivolous one is fundamental to Rule 11 jurisprudence.

### 3. Wolff's "Improper Purpose" Argument Impermissibly Conflates Anti-Zionism with Antisemitism

The core of Wolff's Rule 11(b)(1) argument is identical to those of the other defendants': that because Ms. Johnson and her counsel condemn Zionism—a genocidal expression of white supremacy—then they must have filed this lawsuit to "harass" Wolff "for being a Zionist." Doc. 75-1 at 13–14. This argument was thoroughly refuted in the Omnibus Response, Doc. 62 at § C, supported by the Declaration of Jewish Studies Scholars Dr.

Emmaia Gelman and Dr. Barry Trachtenberg, who provided expert opinion establishing that anti-Zionism is categorically distinct from antisemitism. Jewish Studies Scholars Decl. ¶¶ 1–22.

As the scholars explained, "mainstream scholars have rejected the conflation of Zionism with Jewishness and of anti-Zionism with antisemitism." Jewish Studies Scholars Decl. ¶ 16. Undersigned counsel's LinkedIn posts "do not draw from antisemitic tracts nor tropes." *Id.* ¶ 20. Wolff's attempt to transform political criticism of Zionism into evidence of ethnic hatred is not only unsupported—it is itself "a dishonorable, bad faith use of Rule 11." Doc. 62 at § C(2); *see Pigford v. Veneman*, 215 F.R.D. 2, 3-4 (D.D.C. 2003) (finding Rule 11 violation where attorneys accused opposing counsel of racism without factual support).

### 4. Wolff's Claim of "Waiver" is Misleading

Wolff repeatedly asserts that Plaintiff "waived" arguments by not addressing every point in the omnibus opposition to all defendants' motions to dismiss. Doc. 75-1 at 2, 10-11. This is disingenuous. Ms. Johnson filed a comprehensive omnibus response to seven pending motions—from five separate defendants represented by five different law firms—within the Court-ordered deadline. Doc. 63. That a solo practitioner did not address every argument from every defendant with the same specificity as a team of Gibson Dunn lawyers does not constitute "waiver" for sanctions purposes.

In any event, the failure to prevail on a motion to dismiss is not evidence of bad faith. A claim that simply fails on its merits does not warrant Rule 11 sanctions. *See, e.g., Kraemer v. Grant County*, 892 F.2d 686, 690 (7th Cir. 1990) ("If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct discovery.").

Wolff's January 27, 2026 letter attempts to manufacture a justification for the delay by claiming that "Plaintiff's own Opposition to our motion to dismiss the SAC essentially concedes the absence of merit in Plaintiff's claims against Ms. Wolff." Ben Dor Decl., Ex. A. But the alleged "concessions" Wolff identifies—failure to address certain statute of limitations arguments or to distinguish *Florio*—are waiver arguments on a motion to dismiss, not newly discovered evidence of frivolousness. Wolff raised every one of these arguments in her September 11, 2025 letter. That Ms. Johnon's opposition did not address each of them to Wolff's satisfaction does not create a new sanctionable event—it is simply Wolff's characterization of how the Rule 12 briefing unfolded. Treating a party's litigation choices in opposing an MTD as a new "inappropriate paper" would collapse the distinction between Rule 12 and Rule 11 entirely—the very conflation that *Betz* and *Danik* prohibit.

Moreover, Wolff's claim that she "waited over a month after filing her reply brief in the hope that [Plaintiff] would reconsider" (Doc. 75-1 at 5) is telling. This admission reveals that Wolff's counsel made a *strategic choice* to delay—not because she lacked information, but because she hoped Plaintiff would capitulate. When Plaintiff did not, Gibson Dunn deployed the Rule 11 motion as a weapon of last resort, timed for maximum impact. That is not promptness. That is gamesmanship.

### 5. *Wolff's "Conferral" Complaints Are Meritless*

Wolff complains that undersigned counsel "refused to confer." Doc. 75-1 at 1, 4–5. The record refutes this claim. Gibson Dunn sent its first Rule 11 letter on July 17, 2025, demanding a response by July 23—a six-day deadline. Before counsel could respond, Ms. Johnson sought leave to amend, which the Court granted. Gibson Dunn sent its second letter on September 11, 2025, this time demanding a response by September 15—a four-day

deadline—and proposing a conference the following week. Undersigned counsel responded in writing on October 6, 2025, explaining that "we have carefully considered your position and we continue to believe that our filing is proper" and that Wolff's position was "not grounded in an objective standard." Ben Dor Decl., Ex. E. That Wolff's counsel disagrees with the substance of the response does not mean conferral was refused. It means the parties disagree on the merits—which is exactly what motions to dismiss resolve. Notably, the January 27, 2026 letter—the one that actually attached the Rule 11 motion—did not request a conference at all. It simply stated it was "a final effort to persuade you to dismiss the frivolous claims" and attached the motion. Gibson Dunn made no effort to confer before filing on February 18.

### D. Wolff's Motion is Itself Sanctionable

Rule 11(b)(1) prohibits filings "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Wolff's Motion was filed one day before oral argument, duplicating four already-briefed motions, by a team of well-resourced attorneys targeting a solo practitioner who was simultaneously defending against sanctions from four other defendants. This is precisely the conduct Rule 11 prohibits.

As the Seventh Circuit has recognized, "Rule 11 cannot be allowed to thoroughly undermine zealous advocacy," and this is "especially so in civil rights cases involving unpopular clients." *Kraemer*, 892 F.2d at 690. The coordinated Rule 11 campaign in this case—now numbering five motions—has imposed a devastating burden on undersigned counsel's largely pro bono practice and threatens to chill the very civil rights litigation that

the judiciary should protect. Hamed Decl. ¶ 39; *see also* Carl Tobias, *Rule 11 Recalibrated in Civil Rights Cases*, 36 VILL. L. REV. 105, 106 (1991).

The Court should consider sanctions against Wolff's counsel for filing a duplicative, untimely, and prejudicially-timed motion under Rule 11(c)(3), the Court's inherent authority, and 28 U.S.C. § 1927. *See Adhikari*, 2017 WL 5904782, at *9 (finding improper motive where Rule 11 motion duplicated pending dispositive motion and imposed onerous burden at peak of litigation).

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Omnibus Response in Opposition to Defendants' Rule 11 Motions for Sanctions, Doc. 62, which is incorporated by reference in full, the Court should deny Wolff's Motion for Sanctions, Doc. 75, and consider whether Wolff's counsel's filing of a duplicative, untimely, and prejudicially-timed sanctions motion warrants sanctions under Rule 11(c)(3), the Court's inherent authority, and 28 U.S.C. § 1927.

Respectfully submitted,

_____*/s/Abdel-Rahman Hamed*_____
ABDEL-RAHMAN HAMED, ESQ.
DC Bar No. 1632130
Hamed Law
P.O. Box 25085
Washington, D.C. 20027
(202) 888-8846
Advocates@HamedLaw.com
*Attorney for Plaintiff Aneesa Johnson*