**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANEESA JOHNSON, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-1540-CRC |
| GEORGETOWN UNIVERSITY, et al., | |
| Defendants. | |

**DEFENDANT RACHEL JESSICA WOLFF'S REPLY IN SUPPORT OF HER
MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................3

I. Ms. Wolff's Motion For Sanctions Is Timely..........................................3

  A. Ms. Wolff's Motion Is Timely Under Rule 11's Text and the Advisory Committee Note ..............................................................4

  B. Plaintiff Has Not Been Prejudiced by the Timing of Ms. Wolff's Motion........................................................................................11

II. Sanctions Are Warranted. ...................................................................13

  A. Sanctions Are Warranted Under Rule 11(b)(2). ...........................13

  B. Sanctions Are Warranted Under Rule 11(b)(1). ...........................16

  C. Sanctions Against Mr. Hamed Are Warranted As an Exercise of This Court's Inherent Authority and Pursuant to 28 U.S.C. § 1927. .................17

  D. The Court Should Award Ms. Wolff Reasonable Attorney's Fees and Any Other Sanctions The Court Deems Just and Proper. ..........................17

CONCLUSION....................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Daoud & Partners,*
    2017 WL 5904782 (S.D. Tex. Nov. 30, 2017) ........................................................................10

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,*
    369 F.3d 385 (4th Cir. 2004) ................................................................................................10

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ................................................................................................3

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,*
    498 U.S. 533 (1991)................................................................................................................15

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990)..................................................................................................................3

*DeForte v. Borough of Worthington,*
    844 F. App'x 511 (3rd Cir. 2021)..........................................................................................14

*Divane v. Krull Elec. Co.,*
    200 F.3d 1020 (7th Cir. 1999) ...............................................................................................11

*Estrada v. FTS USA, LLC,*
    810 F. App'x 743 (11th Cir. 2020) ........................................................................................11

*\*Florio v. Gallaudet University,*
    119 F.4th 67 (D.C. Cir. 2024)........................................................................................4, 14, 16

*Hilton Hotels Corp. v. Banov,*
    899 F.2d 40 (D.C. Cir. 1990)....................................................................................................5

*Hospers v. Von Prince,*
    2021 WL 6844902 (D.D.C. Dec. 21, 2021)............................................................................14

*\*Huggins v. Lueder, Larkin & Hunter, LLC,*
    39 F.4th 1342 (11th Cir. 2022) ...............................................................................7, 8, 10, 11

*Jackson v. Cronic,*
    2013 WL 12091693 (N.D. Ga. Jan. 24, 2013).......................................................................11

*\*Jones v. Campbell Univ.,*
    322 F. Supp. 3d 106 (D.D.C. 2018).........................................................................3, 6, 15, 16

*Klayman v. Jud. Watch, Inc.,*
    628 F. Supp. 2d 84 (D.D.C. 2009).........................................................................................17

*Lockhart v. Coastal Int'l Sec., Inc.,*
    905 F. Supp. 2d 105 (D.D.C. 2012).......................................................................................14

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
202 F.3d 315 (D.C. Cir. 2000) ............................................................................3

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023).................................................................6

*Noonan v. CACH, LLC*,
2016 WL 1641405 (E.D. Mo. Apr. 26, 2016)....................................................10

*Oesher v. United States*,
1985 WL 6394 (D.D.C. Oct. 24, 1985) ..............................................................15

*Olson v. Bank of America, N.A.*,
518 F. App'x 488 (8th Cir. 2013) ......................................................................11

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2nd Cir. 2003)................................................................................8

*Plevnik v. Sullivan*,
2023 WL 7279229 (D.D.C. Nov. 3, 2023) ....................................................17, 18

*\*Ridder v. City of Springfield*,
109 F.3d 288 (6th Cir. 1997) ......................................................................7, 9, 10

*Rivas v. Whitman-Walker Clinic, Inc.*,
2017 WL 4712080 (D.D.C. May 30, 2017).......................................................14

*Saltany v. Reagan*,
886 F.2d 438 (D.C. Cir. 1989) ..........................................................................17

*Snyder v. Phelps*,
562 U.S. 443 (2011).............................................................................................16

*Trump v. Clinton*,
640 F. Supp. 3d 1321 (S.D. Fla. 2022) ...............................................................17

*In re Waldrop*,
2017 WL 4857425 (Bankr. W.D. Okla. Oct. 25, 2017).........................................10

*Wannall v. Honeywell, Inc.*,
775 F.3d 425 (D.C. Cir. 2014) ...........................................................................17

*\*Worldwide Primates, Inc. v. McGreal*,
26 F.3d 1089 (11th Cir. 1994) ...........................................................................6

**Statutes**

\*28 U.S.C. § 1927.........................................................................................1, 17

**Rules**

\*Fed. R. Civ. P. 11 ................................................................1, 5, 8, 13, 15, 16

**Treatises**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
    § 1337.2 (4th ed. 2022) ....................................................................................................10

**INTRODUCTION**

Plaintiff's opposition to Defendant Rachel Jessica Wolff's sanctions motion confirms the motion should be granted.  Plaintiff admits the record history, "claims," and "legal contentions" that supply the substantive grounds for Ms. Wolff's Rule 11 requests.  Fed. R. Civ. P. 11(b); *see* Dkts. 47, 63.  Plaintiff does not address (and thus concedes) that the requested sanctions may also issue under the Court's inherent authority and 28 U.S.C. § 1927.  And Plaintiff does not dispute that these authorities treat reasonable attorneys' fees and costs, dismissal with prejudice, and censure as appropriate sanctions for the conduct addressed in the motion.  Instead, Plaintiff relies on Rule 11's advisory committee notes to argue that Ms. Wolff's motion was filed too late, and that its timing has prejudiced Plaintiff.  These arguments fail under the advisory note Plaintiff cites, as well as the plain text of Rule 11 and controlling law as applied to the undisputed record here.

The relevant advisory note urges Rule 11 movants to file promptly after receiving the "inappropriate paper" that warrants sanctions.  Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amend.).  Here, that paper was Plaintiff's October 2025 opposition to Ms. Wolff's motion to dismiss Plaintiff's Second Amended Complaint (SAC).  The SAC itself is sanctionable because it includes claims against Ms. Wolff that violate controlling law Ms. Wolff repeatedly presented to Plaintiff in court filings and Rule 11 letters.  But Plaintiff's opposition to Ms. Wolff's motion to dismiss those claims is what took Plaintiff's conduct firmly across the line that separates parties whose claims require dismissal with prejudice under Rule 12 from parties who engage in bad-faith and abusive litigation that warrants additional sanctions under Rule 11.

Ms. Wolff filed her sanctions motion promptly after Plaintiff filed the "inappropriate papers" above.  The motion was therefore timely under the advisory note Plaintiff cites, as well as under the plain text of Rule 11 and controlling law applying it.  The only deadline in the rule itself is the requirement that the movant serve its motion at least 21 days before filing it so the recipient

1

has a chance to cure the deficiencies voluntarily. There is no question Ms. Wolff's motion satisfied this requirement. She served the motion in time for Plaintiff to cure the deficiencies it cites by voluntarily withdrawing the SAC's frivolous claims before burdening the Court with hearing and adjudicating them. Ms. Wolff's motion was also plainly timely under multiple circuit decisions holding that any prudential time limits on Rule 11 filings are satisfied by motions that permit the opposing party to withdraw the offending materials before a court is forced to rule on them.

Plaintiff cannot refute the points and authorities above, so she resorts to arguing that she was prejudiced by the timing of Ms. Wolff's motion. This argument, too, is baseless. Plaintiff opposed Ms. Wolff's motion on the ordinary two-week response schedule, and did so with the *benefit* of hearing the defense presentations and Court comments about sanctions on February 19. This history, coupled with months of Rule 11 letters and court filings on the claims at issue, foreclose Plaintiff's argument and confirm that Ms. Wolff is the party who has been prejudiced.

Ms. Wolff is a young professional who exercised her First Amendment right to speak on a matter of public concern while she was a student at Georgetown University. Plaintiff's claims against her in this $10 million suit against the university violate controlling law. And Ms. Wolff's anti-SLAPP rights to early dismissal and remedies equivalent to those under Rule 11 were prejudiced when the university removed the case to federal court. Ms. Wolff was then forced to file multiple motions to dismiss and send several unanswered Rule 11 and conference requests, while Plaintiff was given the grace to continue pleading, dropping, and repleading baseless claims in violation of the Court's rules and orders. Throughout it all, Ms. Wolff complied with the rules and afforded Plaintiff all of the professional courtesies Plaintiff has eschewed. On this record, sanctions are not merely warranted but necessary to avoid rewarding Plaintiff's highly prejudicial pattern of litigation abuse and the chilling of protected rights.

2

**ARGUMENT**

**I.    Ms. Wolff's Motion For Sanctions Is Timely**

Ms. Wolff's sanctions motion is timely because it was filed in accordance with Rule 11's text, notes, and precedent, and Plaintiff has suffered no prejudice from its filing.  Plaintiff has now had more than the ordinary opportunity to "meaningfully respond" to the motion, Dkt. 77 ("Opp.") 1, 5, and has done so with the benefit of her counsel's discussion with the Court at the hearing.

Ms. Wolff "cautious[ly]" waited before seeking sanctions in recognition of the "serious[]" nature of Rule 11 violations.  Feb. 19, 2026 Hearing Transcript ("Tr.") at 16-21.  While a "Rule 12(b)(6) motion tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), the "central purpose of Rule 11 is to deter baseless filings in district court and thus … streamline the administration and procedure of the federal courts," *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)) (affirming Rule 11 dismissal of defamation and other claims "designed primarily to harass").  Accordingly—as Plaintiff herself acknowledges—Rule 11 motions are not meant to be "employed … to test the legal sufficiency or efficacy of allegations in the pleadings" because "other motions"—like motions to dismiss—"are available for those purposes." Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amend.); Opp. 13-15.  For these and many other reasons, this Court "does not take requests" to impose sanctions "lightly."  *Jones v. Campbell Univ.*, 322 F. Supp. 3d 106, 109 (D.D.C. 2018) (Cooper, J.).

Cognizant of these considerations, Ms. Wolff focused on Rule 12 arguments, indulging the notion that Plaintiff could have reasonable arguments for sustaining her claims.  But Plaintiff's counsel refused to engage in good-faith discussions about these issues in violation of this Court's rules and the August 2025 bench directive.  Plaintiff's counsel also filed a SAC that did not "streamline" this case in accordance with the representations in her motion for leave and with the

3

Court's understanding in granting leave to file, but instead added back under different labels the same deficient claims against Ms. Wolff that Plaintiff's counsel dismissed from the First Amended Complaint (FAC).  Aug. 26, 2025 Hearing Transcript at 6-7, 9; *see* Dkt. 44 at 4.  This conduct was evidence that counsel's claims against Ms. Wolff went beyond the pursuit of legally baseless claims into frivolous, bad-faith, and harassing litigation.  But still Ms. Wolff gave Plaintiff's counsel the benefit of the doubt by requesting an additional conferral with the hope of "spar[ing] Ms. Wolff and the Court the burden" of a second motion to dismiss.  Dkt. 75-2 Ex. D.

Plaintiff's counsel again refused to meaningfully confer on the arguments and the authorities in Ms. Wolff's letter, *see* Dkt. 75-2 Ex. E, and responded to Ms. Wolff's motion to dismiss by conceding (via waiver) that multiple claims suffered from fatal pleading defects, and by failing to offer any valid distinction of controlling precedents such as the D.C. Circuit's affirmance of this Court's decision in *Florio v. Gallaudet University*, 119 F.4th 67 (D.C. Cir. 2024), *see* Dkt. 75-1 ("Mot.") 1, 9-12; Tr. at 20-21.  This Rule 12 opposition was the filing that confirmed that Plaintiff and her counsel had crossed the line into Rule 11 territory, and it (along with the SAC that it attempted to defend) supported the Rule 11 motion that Ms. Wolff's counsel then prepared and served on Plaintiff's counsel.  Plaintiff failed to engage or withdraw any of the contested claims during the 21-day safe harbor period, and instead determined he would burden Ms. Wolff, her counsel, and the Court by proceeding to a hearing on the SAC's baseless claims against her.  It was only at that point, based on conduct by Plaintiff's counsel squarely within Rule 11, that Ms. Wolff filed her Rule 11 motion, which is both timely and meritorious.

> **A.      Ms. Wolff's Motion Is Timely Under Rule 11's Text and the Advisory Committee Note**

Plaintiff's primary challenge to Ms. Wolff's motion is that it is untimely under the Rule 11 advisory committee note the Court raised at the February hearing.  This challenge fails under the

note itself, as well as under the plain text of Rule 11 and circuit cases applying it, which largely Plaintiff disregards despite Ms. Wolff's counsel previewing these arguments at the hearing.

***Advisory Committee Note's Application Here.*** The committee note on which Plaintiff relies, Opp. 5-6, advises counsel to file Rule 11 motions promptly after the "inappropriate paper" warranting sanctions is filed or otherwise received. Contrary to Plaintiff's contentions, *id.* at 9-12, Plaintiff's October 2025 Rule 12 opposition, Dkt. 63, is the "inappropriate paper" addressed on the very first page of Ms. Wolff's Rule 11 motion. Ms. Wolff focused her motion on that filing under Rule 11(b) precisely be*c*ause it "advoca[tes]" in further support of the "existing" baseless and frivolous claims against Ms. Wolff in the SAC. Opp. 9-12.

Rule 11's strictures apply to every "pleading, written motion, *or other paper*" that an attorney "present[s] to the court … whether by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b) (emphasis added). Rule 11 "subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable," and a litigant can violate Rule 11 by "reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amend.). Thus, where a reasonable attorney becomes aware "that his client's cause was without merit," he can be sanctioned "by virtue of his continuing representation" based on "any specifically identified pleading, motion, *or other paper* unreasonably submitted during the course of the litigation." *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 45 (D.C. Cir. 1990) (emphasis modified).

That is precisely the case here. Ms. Wolff's Rule 11 motion "specifically identified"—on the very first page—Plaintiff's Rule 12 opposition as the paper that clearly crossed the line separating claims that warrant dismissal with prejudice to claims that warrant such relief as well as sanctions for bad-faith and harassing litigation. For that reason, both Plaintiff's operative

pleading—the SAC—and "any subsequent federal court filings" adhering to or advancing that pleading, including "those in opposition to a motion to dismiss, are sanctionable if they resulted in the continuation of a baseless lawsuit." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994); *see also, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (awarding sanctions for opposition to motion to dismiss).

Given Ms. Wolff's counsel's repeated outreach to Plaintiff's counsel about the frivolous nature of the claims asserted against her, it was "apparent to [counsel] when [he] opposed [Ms. Wolff's] motion to dismiss" the SAC that Plaintiff's claims against Ms. Wolff had "no basis, either factual or legal." *Worldwide Primates*, 26 F.3d at 1091, 1093. That is clear from Plaintiff's own Rule 12 response, which waives any defense to certain of Ms. Wolff's challenges, and presents no real answer to *Florio* and other controlling law on the rest. The refusal to dismiss Ms. Wolff from this suit voluntarily after Plaintiff's counsel voluntarily dismissed certain counts in the FAC and "knew, or should have known, that [the SAC's] claim[s] [were just] legally and factually baseless," is the paradigmatic case for sanctions. *Id.* at 1093; *see also Jones*, 322 F. Supp. 3d at 109-10 (awarding sanctions when plaintiff "tripled down" on frivolous theory in his "opposition to [the] motion for sanctions" after "assert[ing]" the frivolous theory in his "amended complaint" and "opposition to the defendants' motion to dismiss").

Plaintiff's Rule 11 opposition has no answer to any of the facts or law above. Plaintiff's assertion that Ms. Wolff only identified the SAC as the inappropriate paper here, Opp. 9-10, is demonstrably false. As detailed above, the first page of Ms. Wolff's Rule 11 motion identified Plaintiff's Rule 12 opposition as the offending paper. *See also* Mot. 6 (citing a case "awarding Rule 11 sanctions based on a frivolous opposition to dismiss"); *id.* at 9-10 (addressing a concession in "Plaintiff's Opposition"); *id.* at 10-12 (same). And the letters from Ms. Wolff's counsel Plaintiff

6

cites (Opp. 9-10)—both of which were sent before Plaintiff filed her Rule 12 opposition—are the very reason why "Plaintiff's response to Ms. Wolff's motion to dismiss the SAC" cemented "grounds for sanctions." Mot. 1. Those letters explained why the SAC's claims were baseless, but instead of dismissing the claims, Plaintiff's counsel opposed Ms. Wolff's Rule 12 motion on grounds that waived any response on certain counts and failed to meaningfully address or rebut controlling authority on the others. This is precisely the kind of record on which Rule 11 sanctions are warranted, and failure to impose them would reward exactly the kind of abusive litigation and chilling of constitutional rights that federal law forbids.

***Timeliness Under Rule 11's Text, Note, and Caselaw.*** Plaintiff's timeliness argument fails, first and foremost, because Rule 11 "contains *no* timing requirement" other than the 21-day safe harbor provision, *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1346 (11th Cir. 2022) (emphasis added), and Ms. Wolff indisputably complied with that provision, *see* Opp. 1. Rule 11(c)(2) provides "immunity from sanctions through self-regulation," *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997), by "giv[ing] a party 21 days to withdraw or correct any pleading or motion challenged by an opponent" before the motion can be filed, *Huggins*, 39 F.4th at 1345-46. Consequently, a sanctions motion cannot be filed "if the opponent withdraws or properly amends the challenged document," *or* "if the court eliminates the opportunity to withdraw or correct the challenged filing by ruling on it before the safe harbor period expires." *Id.* at 1346.

Neither scenario is present here. Ms. Wolff filed her motion in time for Plaintiff to withdraw the baseless and bad-faith claims against Ms. Wolff before (or at) the hearing on Ms. Wolff's Rule 12 motion, which would have spared the Court the burden of having to hear argument (and issue an opinion on) those claims. Plaintiff's counsel did neither. For this reason alone, Ms. Wolff's filing is timely.

7

Ms. Wolff's motion is clearly timely even in circuits that have treated Rule 11's safe-harbor provision "as a practical time limit" that renders a motion untimely if it is filed when the opposing party lacks "an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2nd Cir. 2003). The scenario these courts describe is one in which "the *district court* disposes of a challenged filing before the safe harbor period elapses," making it "too late for the offending party to withdraw the challenged contention." *Huggins*, 39 F.4th at 1347 (emphasis added). Again, that did not happen here. The safe harbor period ended, and Ms. Wolff filed her motion, *before* any Rule 12 decision on the SAC, and in time for Plaintiff's counsel to withdraw the sanctionable claims against Ms. Wolff before burdening the Court with a hearing on them. For this reason as well, the motion is timely and does not remotely implicate the principle that "'a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)'" because that risks "cut[ting] short the safe harbor period." *Id.* at 1348 (quoting Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amend.)).

Rule 11's advisory committee notes also do not aid Plaintiff's counsel. As relevant here, the note that a Rule 11 motion "[o]rdinarily" "should be served promptly after the inappropriate paper is filed" goes on to say this guidance must be applied on a "case-by-case" approach given "the particular circumstances involved." Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amend.). Here, as contemplated by that same note, Ms. Wolff "g[a]ve informal notice to [Plaintiff] … by … letter[] of [the] potential [Rule 11] violation before proceeding to prepare and serve [the] motion." *Id.* Ms. Wolff—in an effort to avoid the need for full merits briefing and

8

sanctions briefing—sent letters to Plaintiff in July 2025 and September 2025 giving notice of the baseless nature of the FAC's and then the SAC's claims against Ms. Wolff.  Dkt. 75-2 Exs. C-D.[1]

Ms. Wolff's repeated attempts to engage with Plaintiff and identify off-ramps to avoid Rule 12 and Rule 11 motions practice were in keeping with the objectives of "the drafters [of Rule 11]," who "anticipated that civility among attorneys and between bench and bar would be furthered by having attorneys communicate with each other with an eye toward potentially resolving their differences prior to court involvement."  *Ridder*, 109 F.3d at 294.  Ms. Wolff gave Plaintiff's counsel multiple opportunities to withdraw the claims or identify colorable bases for them—and waited before moving to Rule 11 with that goal in mind.  Plaintiff's counsel, however, rejected that goal entirely and failed to meaningfully confer on these letters to identify potential areas of common ground.  Plaintiff admits her counsel ignored the July letter and sent a generic response to the September letter that did not engage with *any* of the substantive arguments in that letter or the binding and persuasive authorities cited therein demonstrating that each of Plaintiff's claims against Ms. Wolff was baseless.  Opp. 16-17.  If Plaintiff at any point had *any* authority rendering her arguments at least "fairly debatable," *id.* at 5, her counsel never shared them.

Plaintiff's counsel then filed the motion-to-dismiss opposition, which made crystal-clear that there was no reasonable basis for the claims in the SAC.  At that point Ms. Wolff's counsel began drafting a sanctions motion, which counsel finalized and served on Plaintiff's counsel on January 27, 2026 in compliance with Rule 11(c)(2).  *See* Dkt. 75-2 Exs. A, G.  Plaintiff's counsel

---

[1]  Plaintiff's assertion that these letters did not trigger Rule 11's safe-harbor period is a red herring. Opp. 7-8.  The point is not that the clock started in which Plaintiff should have expected a Rule 11 motion; it is that Plaintiff was on notice that Ms. Wolff was considering pursuing sanctions and was afforded ample opportunity to change course and drop her frivolous pursuit or advancement of the claims against Ms. Wolff.  And Plaintiff's critique of Ms. Wolff's decision to send these letters ignores that they were fully in keeping with the spirit of Rule 11 by providing Plaintiff an early off-ramp to avoid the need for a Rule 11 motion (or motion-to-dismiss briefing).

was served roughly two months after the close of motion-to-dismiss briefing, with enough time for the safe-harbor period to fully run before the hearing. Ms. Wolff then filed her motion a day after the 21-day safe-harbor period elapsed, on February 18. Opp. 1.[2]

During the entirety of the safe-harbor period, Plaintiff's counsel maintained the ability to "withdraw the challenged contention[s]," since the challenged filings remained live. *Huggins*, 39 F.4th at 1347. Plaintiff's cited cases (Opp. 6-7, 10-11) are thus inapposite, since this was not an instance where a Rule 11 motion became futile when the court "rendered … judgment." *Ridder*, 109 F.3d at 296-97 (motion was untimely when not served on offending party and filed until "after the entry of summary judgment"); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc) (similar); *Noonan v. CACH, LLC*, 2016 WL 1641405 (E.D. Mo. Apr. 26, 2016) (similar); *In re Waldrop*, 2017 WL 4857425, at *7 (Bankr. W.D. Okla. Oct. 25, 2017) (similar).[3] Even in that scenario, some courts have held that motions filed *after* final judgment are timely where they were served before judgment. *See, e.g.*, *Huggins*, 39 F.4th at 1346 n.2 (concluding that timeliness of Rule 11 motion was "not at issue" when motion filed "five days after final judgment" still complied with 21-day safe-harbor provision (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1337.2 (4th ed. 2022)).

---

[2] Plaintiff claims it is "[n]otabl[e]" that the Rule 11 letter "did not request a conference at all." Opp. at 17. But that complaint is rich coming from Plaintiff, given her counsel's wholesale refusal to meaningfully confer on either of the Rule 11 letters. Indeed, counsel's failure to confer on any number of other motions in this case was severe enough that the Court had to admonish counsel on that score in August—and even that was not enough to prevent counsel from filing a motion the following month without conferring with Defendants ahead of time. Mot. 4-5.

[3] *Adhikari v. Daoud & Partners*, 2017 WL 5904782 (S.D. Tex. Nov. 30, 2017) is even further afield. There the court faulted the defendants for moving for sanctions *too soon* (as Plaintiff appears to acknowledge, Opp. 6)—before "the resolution of the summary judgment motion"—and rejected the sanctions motion on its merits as "not—even remotely—justified." *Id.* at *2. The court then went on to award the expenses of litigating the motion to the plaintiffs in part because the defendants had acted with "improper motive." *Id.* at *9. None of that has *any* bearing on whether Ms. Wolff's motion is timely.

Regardless, the "window for filing a Rule 11 motion" here was far from "close[d]" because Plaintiff's counsel had the full "21 days to withdraw or correct" the challenged filings, unaffected by any final judgment.  *Huggins*, 39 F.4th at 1346-47 & n.2.  Indeed, this case closely resembles the Eighth Circuit's decision in *Olson v. Bank of America, N.A.*, 518 F. App'x 488, 490 (8th Cir. 2013), which rejected a timeliness challenge where the defendant sought sanctions "several months after the complaint was filed and after the motion to dismiss was filed."  The court easily rejected the argument as "without merit" because "serving the motion for sanctions after the motion to dismiss had no effect on [the plaintiff]'s ability to dismiss the complaint with prejudice and thus avoid sanctions."  *Id.*; *see also Estrada v. FTS USA, LLC*, 810 F. App'x 743, 745-46 (11th Cir. 2020) (holding that "no abuse of discretion occurred in granting [party]'s motion for sanctions filed during the pendency of [its] motion for summary judgment" because "the complaint subject to sanctions [had] survived until … the [party] moved for sanctions").

The same should go here; Ms. Wolff moved for sanctions several months after the motion-to-dismiss opposition and well before any final judgment, giving Plaintiff one last 21-day chance to withdraw her frivolous filings.  Plaintiff is unable to marshal *any* precedent—much less binding precedent—finding sanctions motions untimely in remotely analogous circumstances to these.  Her untimeliness challenge therefore should be rejected.

**B.      Plaintiff Has Not Been Prejudiced by the Timing of Ms. Wolff's Motion.**

"Plaintiff has offered no evidence of prejudice" from Ms. Wolff's motion.  *Jackson v. Cronic*, 2013 WL 12091693, at *5 (N.D. Ga. Jan. 24, 2013); *see also Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1028 (7th Cir. 1999) (rejecting timeliness argument in opposition to sanctions award because sanctioned party had not shown that it "was unreasonably prejudiced by the delay in filing the motion").  Nor could she, because Ms. Wolff is the party who has been prejudiced by Plaintiff's sanctionable claims and arguments.  Plaintiff's allegation of prejudice fails, first and

11

foremost, because she says Ms. Wolff's motion raised claims "substantively identical" to and "duplicative" of the other sanctions motions by other defendants earlier in the case.   Opp. 5-6, 12-13.  That is incorrect because Ms. Wolff's filing is specifically directed at an "inappropriate paper" (Plaintiff's Rule 12 opposition to dismissing the SAC) that the others are not (since they were filed before that paper) and addresses frivolous claims and arguments specific to Ms. Wolff.  But if Plaintiff were correct, then she has suffered no prejudice from having to respond to "substantively identical" arguments she has already briefed with respect to other defendants.

Moreover, Plaintiff has had nearly a year to address these issues in relation to Ms. Wolff. Ms. Wolff sent her first Rule 11 letter to Plaintiff in July 2025—and Plaintiff admits both the July letter and Ms. Wolff's ensuing September letter raised many of the "same deficiencies" articulated in the current Rule 11 motion.  Opp. 1-3, 5.  These deficiencies flowed from Plaintiff's decision to press claims against Ms. Wolff that were barred by the First Amendment, related and controlling Supreme Court and circuit precedents, and statutes of limitations; that also suffered from various pleading deficiencies; and that were brought for an improper purpose of chilling First Amendment rights.  Plaintiff did voluntarily withdraw certain of the FAC's claims against Ms. Wolff based on these deficiencies—only to replead them in the SAC (under different labels and inconsistent with Plaintiff's representations in seeking leave).   Plaintiff's claims of an "ambush" and "gamesmanship," *id.* at 5, 16, thus ring hollow:  Plaintiff is the one who has engaged in these tactics for years in violation of controlling law, this Court's rules and orders, and Ms. Wolff's rights and myriad attempts to confer about withdrawal of the baseless and harassing claims against her.  The prejudice that Plaintiff's tactics caused Ms. Wolff left Ms. Wolff with no choice but to move for sanctions following Plaintiff's submission of her Rule 12 opposition to the SAC.

Plaintiff's response to Ms. Wolff's sanctions motion further disposes of her claims of prejudice. While Ms. Wolff's motion "was not among the four sanctions motions" set for argument on February 19, Opp. 1, 5, the Court allowed Plaintiff's counsel to address the motion at the hearing, Tr. at 70-72, which Plaintiff did on both substance and procedure. Further, Ms. Wolff's counsel acknowledged that Plaintiff's counsel "will have the opportunity to brief" the motion after the hearing, Tr. at 17, which Plaintiff did with the benefit of the Court's bench comments and Ms. Wolff's arguments on the motion. Accordingly, and if anything, the timing of Ms. Wolff's motion *benefitted* Plaintiff. She has now had more than an opportunity to "meaningfully respond" to Ms. Wolff's motion. Opp. 1, 5. Plaintiff filed her response on the ordinary two-week schedule for motion responses, with the *benefit* of both the Court's questions at the February hearing and the arguments that all defendants raised there, including the defendants whose sanctions motions were set for argument that day. And after all of that, her opposition fails to identify any reason not to grant Ms. Wolff's measured request for Rule 11 relief from Plaintiff's baseless and harassing claims against her.[4]

## II.    Sanctions Are Warranted.

### A.    Sanctions Are Warranted Under Rule 11(b)(2).

Neither Plaintiff's claims against Ms. Wolff in the SAC nor Plaintiff's arguments in defense of those claims in her opposition to Ms. Wolff's motion to dismiss is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

---

[4] For all these reasons, Ms. Wolff's sanctions motion is not itself sanctionable. *Contra* Opp. 17. As discussed, Ms. Wolff's sanctions motion is timely, complies with Rule 11's procedural provisions, and reiterates arguments Plaintiff's counsel had notice of since July 2025 and in four other sanctions motions.

Plaintiff offers virtually no defense to Ms. Wolff's arguments that each of the claims against her are frivolous. Among other reasons, the tort claims are plainly barred by the First Amendment under binding D.C. Circuit precedent in *Florio v. Gallaudet University*, 119 F.4th 67, 70 (D.C. Cir. 2024), and the statute of limitations, Mot. 8-11; the employment-discrimination claim is clearly time-barred, and Plaintiff's motion-to-dismiss opposition makes no attempt to dispute that point, *id.* at 11; and the federal statutory claims are barred by the First Amendment, which Plaintiff's motion-to-dismiss opposition likewise does not dispute, *id.* at 12.

Plaintiff's sanctions opposition makes virtually no attempt to argue that any of her claims, or the arguments in her motion-to-dismiss opposition, are nonfrivolous under existing law. Her only response is to resist the point that she waived the arguments she did not address in her motion-to-dismiss opposition. Opp. 15. But it is well-settled that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Hospers v. Von Prince*, 2021 WL 6844902, at *2 (D.D.C. Dec. 21, 2021) (quoting *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012)). That Plaintiff chose to file "a comprehensive omnibus response" to all the motions to dismiss, Opp. 15—almost an hour after the deadline, and without conferring with Defendants prior to filing an overlength brief, *see* Dkt. 65 at 1-2—does not excuse her from responding to the various arguments raised in those motions. It is telling that, even in her sanctions opposition, Plaintiff fails to articulate any argument on the points she waived. And the fact that Plaintiff's counsel is a "solo practitioner," Opp. 15, does not excuse his "shortcomings" in defending his client or "relax[]" the legal standard the Court must apply, *DeForte v. Borough of Worthington*, 844 F. App'x 511, 515 (3rd Cir. 2021); *e.g.*, *Rivas v. Whitman-Walker Clinic, Inc.*, 2017 WL 4712080, at *2 n.3 (D.D.C. May 30, 2017) (awarding sanctions against solo practitioner).

14

Plaintiff tries to evade the frivolous nature of her claims and arguments by asserting that the "proper vehicle" for these issues is a motion to dismiss. Opp. 13-14. But she ignores the many cases Ms. Wolff cited awarding sanctions on similar grounds where the claims were plainly foreclosed by existing law (such as by an affirmative defense or by a statute of limitations), Mot. 8-12. The point is not just that Plaintiff's claims "fail[] on [their] merits," Opp. 15; it is that they are so objectively "baseless" that they are not "warranted by existing law," *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991); Fed. R. Civ. P. 11(b)(2). That makes them sanctionable, even if the same legal principles render the claims both subject to dismissal and frivolous. *See, e.g.*, *Jones*, 322 F. Supp. 3d at 109 (sanctions warranted where arguments were not "legally tenable" and there was no "reasonable way to construe existing law" in the sanctioned party's favor). Plaintiff's suggestion that "the sanctions question is moot" if the Court holds that the claims are subject to dismissal would effectively mean that frivolous claims are *never* sanctionable. Opp. 13-14. That is not the law. "[F]rivolous" arguments like Plaintiff's that "exceed[] the bounds of creative advocacy" warrant sanctions. *Jones*, 322 F. Supp. 3d at 110.

Plaintiff finds no more traction in asserting that she is seeking to extend existing law by "expand[ing] accountability for discriminatory doxing campaigns." Opp. 14. Nonfrivolous arguments for extending or modifying the law, Fed. R. Civ. P. 11(b)(2), "must be well-argued and well-founded," and Plaintiff's "arguments [are] neither," *Oesher v. United States*, 1985 WL 6394, at *3 (D.D.C. Oct. 24, 1985). Plaintiff cites *no* authority—in positive law, case law, law review articles, or any other source—offering *any* support for her theory that those who "fund and participate" in "doxing campaigns" should be held liable. Dkt. 62 at 7-9. And although Plaintiff argues that doxing should be granted "judicial recognition" as a "tort," *id.* at 8, she nowhere articulates a rationale for how that tort could reach First Amendment-protected expression of

15

opinions and accurate facts like Ms. Wolff's, *see, e.g.*, *Florio*, 119 F.4th at 70 (defamation tort claim based on opinion and true facts dismissed); *Snyder v. Phelps*, 562 U.S. 443, 451-53, 456 (2011) (similar for intentional infliction of emotional distress tort claim).  Nor does Plaintiff attempt to explain how her new tort would overcome the same limitations issue that dooms her existing tort claims against Ms. Wolff, or how her employment or federal statutory claims are warranted as extensions of existing law.  Plaintiff thus offers no basis for allowing any of her claims to proceed even if existing law is expanded.  "[T]o the extent that [Plaintiff]'s counsel was genuinely arguing to change the law," then, the argument "must be deemed frivolous" and outside "the bounds of creative advocacy." *Jones*, 322 F. Supp. 3d at 109-10.

## B.     Sanctions Are Warranted Under Rule 11(b)(1).

Sanctions are also necessary here because Plaintiff's claims against Ms. Wolff are "being presented" for an "improper purpose"—"harass[ing]" Ms. Wolff for engaging in First Amendment-protected expression.  Fed. R. Civ. P. 11(b)(1).  Plaintiff admits that she and her counsel "condemn Zionism," Opp. 14—but Rule 11 prohibits them from using the courts to "weaponize their enmity" of Zionism by bringing frivolous lawsuits against Zionists like Ms. Wolff as part of a political agenda, Mot. 13-14.  Plaintiff has no rebuttal on that front.

Plaintiff's only argument on this issue is to accuse Ms. Wolff of "attempt[ing] to transform political criticism of Zionism into evidence of ethnic hatred" on the ground that "anti-Zionism is categorically distinct from antisemitism" Opp. 14-15; *see also* Dkt. 62 at 11-18.  But Plaintiff's accusation is completely off base.  Ms. Wolff has not argued that Plaintiff and her counsel are advancing this suit against Ms. Wolff for antisemitic reasons.  Ms. Wolff's argument instead rests on Plaintiff's and her counsel's admitted hatred of Zionism and Zionists, their decision to bring this suit against Ms. Wolff and other Zionists (who they expressly label as such), and the frivolous nature of the claims against Ms. Wolff.  Mot. 13-14.  The precise nature of the "political

16

grievances" at issue here is irrelevant; it suffices that Plaintiff and her counsel are "deliberate[ly] us[ing] [] the judicial system to pursue a political agenda" by pressing "frivolous" claims against their perceived ideological adversaries. *Trump v. Clinton*, 640 F. Supp. 3d 1321, 1332 (S.D. Fla. 2022), *aff'd*, 161 F.4th 671 (11th Cir. 2025). That is not "a proper function of a federal court," so sanctions are warranted. *Saltany v. Reagan*, 886 F.2d 438, 440 (D.C. Cir. 1989).

### C. Sanctions Against Mr. Hamed Are Warranted As an Exercise of This Court's Inherent Authority and Pursuant to 28 U.S.C. § 1927.

Plaintiff has no response to the argument that sanctions are warranted against her counsel as an exercise of this Court's inherent authority and under 28 U.S.C. § 1927. *See* Mot. 14-15. Plaintiff's response to the other Defendants' sanctions motions did not address these bases for sanctions, either. Plaintiff's failure to address the two other avenues by which this Court may impose sanctions means she has forfeited any challenges to the imposition of sanctions on those bases. *See Plevnik v. Sullivan*, 2023 WL 7279229, at *5 (D.D.C. Nov. 3, 2023) (Cooper, J.) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)), *aff'd*, 146 F.4th 1174 (D.C. Cir. 2025); *cf. Klayman v. Jud. Watch, Inc.*, 628 F. Supp. 2d 84, 95 (D.D.C. 2009) (plaintiff who failed to timely raise arguments against sanctions motion "waived his arguments to Defendants' motion requesting sanctions").

### D. The Court Should Award Ms. Wolff Reasonable Attorney's Fees and Any Other Sanctions The Court Deems Just and Proper.

Plaintiff does not dispute that, if the Court concludes sanctions are warranted, it is appropriate to award Ms. Wolff reasonable attorney's fees and any other expenses incurred in defending against the SAC and Plaintiff's opposition to the motion to dismiss—to deter Mr. Hamed from future violations of Rule 11, to vindicate the Court's authority by holding him liable for the judicial and attorney resources needlessly spent on litigating these frivolous claims, and to

compensate Ms. Wolff for Mr. Hamed's wrongful conduct.  Mot. 15-16.  Plaintiff also does not contest that dismissal with prejudice and a censure are appropriate sanctions here.  *Id.* at 16. Plaintiff's silence on these points means she has conceded them and has forfeited any argument to the contrary.  *Plevnik*, 2023 WL 7279229, at \*5.

## CONCLUSION

The Court should grant the motion for sanctions and impose reasonable attorney's fees and costs as well as any other sanctions that the Court deems proper, including dismissal with prejudice and a censure.  Ms. Wolff reserves the right to seek an award of attorney's fees and costs under the District of Columbia Anti-SLAPP Act and related rights she timely raised in Dkts. 25 and 32.

Date: March 11, 2026

Respectfully submitted,

*/s/ Elizabeth P. Papez*

David M. Kusnetz (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, N.Y. 10016
Telephone: 212.351.4000
Facsimile: 212.351.4035
dkusnetz@gibsondunn.com

Elizabeth P. Papez (D.C. Bar No. 476993)
Lavi M. Ben Dor (D.C. Bar No. 90014824)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
epapez@gibsondunn.com
lbendor@gibsondunn.com

*Counsel for Defendant Rachel Jessica Wolff*