**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANEESA JOHNSON**,<br>Plaintiff,<br>v.<br>**GEORGETOWN UNIVERSITY**, *et al.*<br>Defendants. | Case No. 25-cv-1540 (CRC) |

**OPINION**

Last year, Plaintiff Aneesa Johnson, an African American and Muslim woman of Palestinian origin, sued Georgetown University and several other Defendants, alleging unlawful employment discrimination after she was terminated from her university position based on eight-year-old social media posts she made describing her "hat[red]" for Zionists. Most Defendants in the case moved to dismiss the claims against them on various jurisdictional and merits grounds. The Court granted those motions to dismiss earlier this year.

One Defendant, Canary Mission, never appeared in the case. Johnson has now moved for default judgment against that Defendant, a controversial organization which Johnson's complaint characterizes as an "anonymous cyberstalking and blacklisting operation" that "targets" individuals who advocate for Palestinian rights. Second Amended Compl. ("SAC") ¶ 49. According to Johnson's complaint, Canary Mission "maintains complete operational anonymity, with no public identification of leadership, staff, or physical locations" and does so in part by "employ[ing] an elaborate network of intermediaries to obscure its true sources of funding and control." SAC ¶¶ 55, 50. The group's evasiveness notwithstanding, Johnson has not demonstrated that she validly effected service of process on Canary Mission. For that reason, the Court must deny her motion for default judgment.

## I. Background

### A. Factual Background

The facts of this case are detailed in the Court's March 31, 2026 Memorandum Opinion. See Johnson v. Georgetown Univ., 827 F. Supp. 3d 133, 149–53 (D.D.C. 2026). For present purposes, a brief overview of the relevant facts and procedural history of this case will suffice.

In August 2023, Johnson applied to serve as the Assistant Director of Academic and Faculty Affairs at Georgetown's Walsh School of Foreign Service ("SFS"). Id. at 149. The University offered her the "at-will" position on October 2 and explained in its offer letter that she would have probationary employment status for the first six months of her tenure. Id.

Just a few days after Johnson accepted the job, "on October 7, the militant group Hamas . . . carried out a gruesome attack on Israel," and "Israel immediately launched a retaliatory military campaign in the Gaza Strip[.]" Id. Those events "roiled American college campuses like few other events since the Vietnam War." Id. at 148. Johnson, meanwhile, started her new position on October 30, in the midst of campus tensions over the attack and its aftermath. Id. at 149.

Johnson was introduced to the SFS community by email. Rachel Wolff, a Jewish dual degree student at SFS and Georgetown's law school, looked Johnson up online. The top search result was a profile on Canary Mission's website, which has apparently existed since 2015. See SAC ¶¶ 96–102. The profile publishes social media posts Johnson made when she was a first-year undergraduate at Northwestern University eight years earlier, when she was an on-campus advocate for the University's divestment from Israeli companies and other pro-Palestinian causes. Id. ¶¶ 93, 98. The posts included comments like, "Ever since going to [Northwestern] I have a deep seeded [*sic*] hate for Zio bitches," id. ¶ 89, and "You know why I call them Zio

bitches, because they're dogs," id. Johnson also re-upped another social media user's post, which included a photograph of a scowling Orthodox Jewish man with the caption, "When the whole world hates you bc you a thief and grow up looking like a shaytan #GrowingUpIsraeli." Id. ¶ 90. Johnson alleges that she closed her social media accounts and withdrew from public activism after making these posts, but they remain accessible on Canary Mission's website to this day. Id. ¶¶ 101–03.

Upon discovering Johnson's Canary Mission profile, Wolff made a series of social media posts herself, castigating Georgetown for having hired Johnson. Johnson, 827 F. Supp. 3d at 150. Those posts went viral and were amplified by other campus figures, including Ilya Shapiro, a former Georgetown law school lecturer and administrator. Id. The following day, a high-level administrator informed Johnson that she would be placed on paid administrative leave while the University investigated her online conduct, and the SFS Dean distributed an email, informing the student body and faculty of Johnson's suspension. Id. at 150–51. After several weeks, Georgetown terminated Johnson's employment on the ground that she had "engaged in unprofessional conduct" online and then "subsequent[ly] fail[ed] to address concerns raised by [her] social media activities." Id. at 152. Her termination letter went on to state that Johnson was being fired pursuant to the University's Human Resources Policy #204, which authorizes termination "at any time during the probationary period" if the employee's department determines that she "cannot accomplish the job" or that her "behavior is unacceptable[.]" Id.

B. Procedural History

In Johnson's view, the way she was treated during her brief stint at Georgetown, as well as the circumstances of her firing, constituted invidious, class-based discrimination. In April 2024, she filed a charge of discrimination based on race, religion, color, sex, and national origin

with the Equal Employment Opportunity Commission ("EEOC") and cross-filed the charge with the local fair employment practices agency. SAC ¶¶ 9–10. She then filed a lawsuit in the Superior Court of the District of Columbia in February 2025. Initially, the action named only Georgetown University as a defendant, but shortly after filing the complaint, Johnson replaced it with a First Amended Complaint, which grew to fifteen counts (including civil rights and tort claims) against several more defendants, including Canary Mission. The Georgetown-affiliated Defendants removed the case to federal court in May.

By the fall, all defendants except Canary Mission filed Rule 12(b)(1) and/or (b)(6) motions to dismiss the claims against them. The Court granted those motions on March 31, 2026 and dismissed all claims against the movants with prejudice. See Mem. Op. & Order, ECF No. 80, at 81–82. But because Canary Mission had still not appeared in the case, the Court permitted Johnson to seek entry of default and move for default judgment against the organization, pursuant to Federal Rule of Civil Procedure 55. Johnson did so on April 22, 2026. See Mot for Entry of Default, ECF No. 81; Mot. for Default J., ECF No. 82.

In her request for the entry of default, Johnson represents that she effected service of process on Canary Mission on May 7, 2025 by sending the complaint and summons to a "separate organization called the Central Fund of Israel ('CFI')." Mot. for Entry of Default, Decl. of Abdel-Rahman Hamed ("Hamed Decl.") ¶¶ 5, 9. Johnson's complaint alleges that donations to Canary Mission "are funneled through" CFI, a New York-based 501(c)(3) organization that acts as a financial intermediary for groups supporting Zionist settlements in Palestine[.]" SAC ¶ 16. CFI, in turn, purportedly "transfer[s]" donated funds to an "additional passthrough entit[y]" called Megamot Shalom. Id. ¶ 53. Johnson's counsel avers that American donors to Canary Mission have listed CFI on their tax forms. Hamed Decl. ¶ 6. For instance, he

explains, "the Form 990PF for the Ann and Robert Fromer Charitable Foundation Inc. from 2023 lists a payment to 'Central Fund of Israel (Canary Mission).'" Id. And CFI's own Form 990 states that its address as of 2023 was 461 Central Ave., Cedarhurst, NY 11516. Id. ¶ 7. Stitching this information together, Johnson's counsel "concluded that Canary Mission operates out of CFI at 461 Central Ave, Cedarhurst, NY 11516-2008," and therefore served Canary Mission via certified mail at that address on May 7, 2025. Id. ¶¶ 8–9.

A few weeks after Johnson requested default and moved for default judgment, CFI President Jay Marcus filed a declaration on the docket. See generally Decl. of Jay Marcus, ECF No. 83. His declaration stated that Canary Mission does not operate through or out of CFI and denied that anyone at his organization accepted service on Canary Mission's behalf. Id. at ¶¶ 5–8. Given the peculiarity of the filing, the Court held a brief hearing concerning the declaration and ultimately struck it from the docket as procedurally improper, given that CFI is a non-party and its counsel cited no basis in the Federal Rules of Civil Procedure for accepting the filing. See June 2, 2026 Minute Entry. The Court also gave Johnson an opportunity to file a supplemental memorandum that would explain her assertion that she had validly served Canary Mission. As of the writing of this Opinion, the Clerk of Court has not yet entered default against Canary Mission.

## II. Legal Standards

Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (cleaned up). Obtaining default judgment is a two-step process. See Boland v. Cacper Const. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015). First, a plaintiff must request that the Clerk enter default against a party who has "failed to plead or otherwise defend" against the

action. Fed. R. Civ. P. 55(a). Then, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P 55(b)(2). The first step is a "necessary predicate to a grant of default judgment against any defendant." Peak v. District of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006). Furthermore, "default judgment can only be entered against a party that has defaulted on its obligation to respond to the complaint," and because "the obligation to respond is triggered by proper service of process," a "default cannot be entered where there was insufficient service of process." Parada Orellana v. Hann's Harvard, Inc., No. 25-cv-1094 (LLA), 2026 WL 496919, at *4 (D.D.C. Feb. 23, 2026) (cleaned up).

Once the Clerk has entered default against a non-responsive party, that party is "deemed to admit every well-pleaded allegation in the complaint." SEIU Nat'l Indus. Pension Fund v. Vistacare LLC, 819 F. Supp. 3d 1, 10 (D.D.C. 2026) (cleaned up). However, "a notation of default against a defendant does not automatically entitle a plaintiff to a default judgment"; instead, taking the plaintiff's well-pleaded allegations as true, the court must evaluate whether the complaint states a valid claim for relief. United States v. $1,071,251.44 of Funds Assoc. with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018). Conceptually, then, "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. (cleaned up). "Whether default judgment is appropriate is," ultimately, "in the discretion of the trial court." SEIU Nat'l Indus. Pension Fund, 819 F. Supp. 3d at 10 (cleaned up).

## III. Analysis

Johnson is not entitled to the entry default or default judgment on her claims against Canary Mission because she has not offered proof of adequate service as to the organization. The Court further observes that even if she had effectively served Canary Mission, and even if

the Clerk were to enter default, default judgment would still likely not be warranted because her complaint does not state a valid claim for relief against Canary Mission.

A. Service of Process

"[P]roper service is a prerequisite to entry of default and default judgment[.]" Royall v. Eckerd Youth Alternatives, Inc., No. 25-7188, 2026 WL 1042186, at *1 (D.C. Cir. Apr. 7, 2026) (first citing Mann v. Castiel, 681 F.3d 368, 372 (D.C. Cir. 2012); and then citing Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005)). Johnson posits that she properly served Canary Mission on May 7, 2025 by delivering the complaint and summons, via certified mail, to CFI at its address in Cedarhurst, New York. She argues that CFI is an "alter ego" of Canary Mission because donors to Canary Mission appear to send money to Canary Mission by way of CFI. See Supp. Br. in Suppl. of Mot. for Default J. ("Suppl. Br."), ECF No. 88, at 3. And because Canary Mission and CFI are alter egos, she submits, effective service on the latter qualifies as such on the former.

Johnson's argument misses the mark for a few reasons. To understand why, let's first lay some groundwork. Federal Rule of Civil Procedure 4(e)(1) and (h) permit a plaintiff to serve an organizational or corporate[1] defendant in accordance with the law of the state in which the district court is located. D.C. Superior Court Civil Rule 4(c)(4)—along with its Federal Rules equivalents 4(e)(1) and (h)—permit service on a corporate defendant via registered or certified mail. "In general, service on a parent, subsidiary, cosubsidiary, or affiliate of a corporate defendant is not service on the defendant, and many cases so hold." Bastani v. AFGE, AFL-

[1] Although neither Canary Mission nor CFI's precise organizational form is clear from the complaint or briefing, Johnson treats the two as either unincorporated associations or corporations, and the same service rules apply to both. See Suppl. Br. at 3; see also Fed. R. Civ. P. 4(h); D.C. Super. Ct. Civ. R. 4(h). The Court will follow suit.

CIO, No. 20-cv-3061 (RDM), 2022 WL 2156998, at *2 (D.D.C. June 14, 2022) (cleaned up). But an exception to this rule applies where a parent may be held to be a subsidiary's agent at law for purposes of service of process where the evidence shows one is the agent or alter ego of the other. Id.; cf. I.A.M. Nat'l Pension Fund, Benefit Plan A v. Wakefield Indus., Inc., Div. of Capehart Corp., 699 F.2d 1254, 1258–59 (D.C. Cir. 1983) ("While the relationship of parent and subsidiary alone would not suffice, where [] two corporations are not really separate entities[,] service on the parent will reach a foreign subsidiary." (internal citations omitted)). Said a slightly broader way, "[p]rinciples of agency . . . permit one corporation or business organization to be the agent of another institution so that service of process on an officer or on a managing or general agent of one organization can be valid service on another," and "[i]t also is possible for two technically independent corporations to be so interrelated on an operating level that service on one as agent for the other will be upheld." 4A Wright & Miller Fed. Prac. & Proc. § 1104 (4th ed. 2026).

So far so good. Now come the problems. For one thing, Johnson offers no standard by which to assess whether Canary Mission and CFI are, legally speaking, alter egos. Simply saying that two organizations are "not really separate entities," I.A.M. Nat'l Pension Fund, 699 F.2d at 1259, does not make it so.

For another, even if the Court were to employ the familiar test that courts in this District use in determining whether to disregard the "corporate veil," Johnson would have to substantiate "such unity of interest and ownership that the separate personalities" of the entities "no longer exist." Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 22–23 (D.D.C. 2000) (quoting Labadie Coal Co. v. Black, 672 F.2d 92, 97 (D.C. Cir. 1982)); see also Lopes v. JetsetDC, LLC, 994 F. Supp. 2d 135, 146 (D.D.C. 2014); McWilliams Ballard, Inc. v. Broadway

Mgmt. Co., Inc., 636 F. Supp. 2d 1, 7–8 (D.D.C. 2009).[2] To be sure, Johnson's proffered evidence suggests there is *some* interrelationship between the organizations. Donors have apparently directed funds to CFI with the express understanding that they would reach Canary Mission. See ECF No. 81-4 at 12 (Ann and Robert Fromer Charitable Foundation's Form 990-PF, listing a donation to "Central Fund of Israel (Canary Mission)"); ECF No. 81-5 at 1 (Helen Diller Family Foundation tax form listing donation to Central Fund of Israel and describing purpose of grant as "Canary Mission for Megamot Shalom"). And it is curious indeed that CFI's President tried to inject himself into this litigation in order to contest the validity of service on Canary Mission. See Decl. of Jay Marcus, ECF No. 83. (One wonders why CFI would have any interest at all in contesting service of process on an organization to which it purports to have no connection.)

The Court need not, and does not, opine one way or another on the precise relationship between the two organizations, which appear, on first blush, to have at least some institutional link. On the allegations and evidence provided in this case, Johnson has not persuaded the Court that Canary Mission and CFI are *so closely* intertwined as to constitute essentially the same organization. In considering whether there is "unity of interest and ownership" between two organizations, for instance, courts will consider factors such as the observation of corporate formalities, the commingling of funds and assets, and use of the same office or business location. See Mazza v. Verizon Wash. DC, Inc., 852 F. Supp. 2d 28, 41 (D.D.C. 2012). Other than the

[2] The Court observes that veil-piercing doctrines may vary state to state, as "[c]orporations are generally 'creatures of state law[.]'" Rodriguez v. FDIC, 589 U.S. 132, 137 (2020) (quoting Cort v. Ash, 422 U.S. 66, 84 (1975)). As Johnson has not proffered *any* legal standard for determining whether two organizations are alter egos for purpose of service of process, it is perhaps unsurprising that she also has not addressed the question of what state's corporate law should apply (for example, the District of Columbia's or New York's).

fact that CFI appears to have channeled certain donations to Canary Mission, there is not much that the Court can gather as to organizational overlap. Counsel's representations on this point are too conclusory to be helpful. See Hamed Decl. ¶ 8 ("Based on this official [tax] documentation, I concluded that Canary Mission operates out of CFI[.]"). And the complaint's allegations are no more clarifying—in fact, they could be read to *undermine* Johnson's alter ego theory, as the complaint makes clear that Canary Mission's "principal place of business" is in Jerusalem, despite that it receives mail in the United States "c/o" CFI, see SAC ¶ 16, and stresses that CFI serves as a "financial *intermediary* for groups supporting Zionist settlements in Palestine," id. (emphasis added). From these allegations, it is far from clear whether CFI and Canary Mission are effectively one and the same entity.

Johnson's supplemental brief has little to add on the exact nature of the relationship between the two organizations. Her only other argument is that she should not have to "prove the propriety of service at this juncture" because Canary Mission has waived any personal jurisdiction arguments by failing to appear and raise the issue. Suppl. Br. at 4. Personal jurisdiction arguments are, indeed, waivable. See, e.g., In re Sealed Case, 932 F.3d 915, 922 (D.C. Cir. 2019). But that reality does not change the fact that "entry of a default judgment is not automatic," and "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." Mwani, 417 F.3d at 6; see also Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 74 (D.D.C. 2017). "[S]ince service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied." Combs v. Nick Garin Trucking, 825 F.2d 437, 442 (D.C. Cir. 1987) (footnotes omitted); see also Portillo v. Smith Commons DC, LLC, No. 20-cv-49 (RC), 2021 WL 3287741, at *2 (D.D.C. Aug. 2,

2021) (explaining same). The Court cannot conclude based on Johnson's allegations or her proffered evidence that Canary Mission and CFI are alter egos, such that service of process on CFI (if effective at all) properly qualified as service of process on Canary Mission.

There is yet a third problem with service here. Bracketing the alter ego issue, it is not evident that Johnson adhered to D.C. Superior Court Civil Rule 4's requirements in submitting proof of service. Under Rule 4(*l*)(1)(B), if service is made by registered or certified mail, "the return must be accompanied by the signed receipt attached to an affidavit[.]" And "if the return receipt does not purport to be signed by the party named in the summons," the affidavit must provide "specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process in Rule 4(e)–(j)." D.C. Super. Ct. Civ. R. 4(*l*)(1)(B)(iv). The return receipt filed here indicates that Johnson's service packet was "Delivered, Left with Individual" at 461 Cedarhurst Ave., Cedarhurst, NY. See ECF No. 81-7. But that individual is not named, and his or her signature is completely illegible. In light of that defect and absent any other clarifying information, the Court has no way of ascertaining whether the person who signed for the service packet meets the requirements laid out in the Superior Court Rules, including that the person was an agent authorized to accept service of process on behalf of CFI, much less Canary Mission.

In sum, the Court cannot conclude that Johnson properly served Canary Mission. And that dooms her motion for default judgment. Again, "[d]efault cannot be entered where there was insufficient service of process" because "a defendant's obligation to respond to a complaint arises only upon service of the summons and complaint[,]" and if service is deficient, the defendant's "obligation to plead or otherwise respond ha[s] actually not arisen." Scott v. District of Columbia, 598 F. Supp. 2d 30, 36 (D.D.C. 2009).

When service has not been made within applicable time limits after a complaint is filed, the Court must give the plaintiff an opportunity to show good cause for the failure and, upon such a showing, extend the time for service for an appropriate period. See Fed. R. Civ. P. 4(m). Otherwise, the Court must dismiss the action against the unserved defendant without prejudice. Id. The Court will, accordingly, order Johnson to show cause in writing by 7 days why Canary Mission should not be dismissed as a defendant for lack of service.

B. Liability

Even if Johnson's service on Canary Mission were valid, the Court would be hard-pressed to find that her well-pleaded allegations state a claim against that Defendant. Johnson's complaint accused Canary Mission of (1) aiding and abetting Georgetown University's discriminatory conduct, in violation of D.C. Code § 2-1402.62, and (2) engaging in a conspiracy with its co-Defendants to deprive Johnson of her civil rights, in violation of 42 U.S.C. § 1985(3).

As to the first claim, the Court observed in its prior Memorandum Opinion that aiding and abetting liability does not lie where "the Court has found that no discriminatory acts occurred." Johnson, 827 F. Supp. 3d at 174 (quoting Slate v. Pub. Def. Serv. for DC, 31 F. Supp. 3d 277, 301 (D.D.C. 2014)). In the current posture, it would be strange for the Court to conclude the complaint sufficiently alleged that Canary Mission aided and abetted Georgetown in discriminating against Johnson when it has already concluded that Johnson did not make out any underlying discrimination on Georgetown's part. Furthermore, as the Court also observed in its prior opinion, Johnson has not adequately alleged that Canary Mission targeted her based on any prohibited characteristic. Rather, Johnson herself contended that the reason she was targeted by the website was "because of her position on Palestine and her opposition to the occupation, the apartheid and genocide that's happening in Palestine." Id. at 175 (quoting Mot. to Dismiss

Hearing Tr. 67:3–8). And "[p]lenty of non-Palestinians, non-Muslims, and non-African Americans appear to share that viewpoint." Id.

As to the second claim, among other problems, the Court remains unpersuaded that the complaint alleges the kind of agreement required to make out a civil rights conspiracy. As it previous explained, "the plaintiff must convey some sense that co-conspirators had a mutual understanding to try to accomplish a common and unlawful plan, thereby sharing in the general conspiratorial objective." Id. at 171 (cleaned up). The complaint simply does not make the requisite showing of a "single plan, the essential nature and general scope of which were known to each person who is to be held responsible for its consequences." Id. (cleaned up). "There is no suggestion of a mutual understanding or shared conspiratorial objective—particularly between the likes of Canary Mission, who memorialized Johnson's years-old Tweets, and the Georgetown Defendants, who ultimately acted on that information based on an independent, internal disciplinary process." Id.

As a result, even if Johnson had surmounted the challenge of properly serving Canary Mission, her motion for default judgment would stumble on the merits. Assuming for the sake of argument that Johnson's well-pled allegations are accurate, her complaint states neither a viable aiding-and-abetting claim nor a viable civil rights conspiracy claim against Canary Mission. That would independently warrant *sua sponte* dismissal of Johnson's claims against Canary Mission without prejudice. See, e.g., Green v. Gamez, No. 16-cv-01159, 2017 WL 5761608, at *3 (W.D. Tex. Nov. 28, 2017) (Lamberth, J.).

## IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Default Judgment. A separate Order shall accompany this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 31, 2026